2004 OK 37

The **CITY OF GUYMON,** a municipal Corporation; and **Guymon Industrial Authority,** a public trust, Plaintiffs/Appellees,

v.

Charles **BUTLER,** Chairman, **Art Twombly,** Member, and **Joe Mayer,** Former Member, **Texas County Excise Board; Texas County Excise Board; Thyra Grounds,** Texas County Assessor; **Rita Wise,** Texas County Treasurer; and **Board of County Commissioners, Texas County, Oklahoma,** Defendants/Appellants.

No. 98,766.

Supreme Court of Oklahoma.

May 25, 2004.

---

Larry L. Field, Larry L. Field P.C., Guymon, OK, for Appellants.

David K. Petty, David K. Petty, P.C., Guymon, OK, James D. Batchelor, Leslie V.

Batchelor, Batchelor and Powers, P.C., Oklahoma City, OK, for Appellees.[1]

WINCHESTER, J.

¶1 The issue is whether the appellants[2] (the County) properly withheld an ad valorem tax increment from the appellees, the City of Guymon and Guymon Industrial Authority (the City). The County asserts that the Guymon–Seaboard Economic Development Project, established by ordinances enacted by the City of Guymon, violates provisions of the Constitution of Oklahoma, and the Local Development Act (62 O.S.2001, §§ 850–880)[3] and therefore it properly withheld the payment. The district court found for the City and the County appeals. We affirm.

## I. PROCEDURE

¶2 On May 31, 2002, the City sued the County, asking for a peremptory writ of mandamus ordering the County to assess, collect, and disburse to the City ad valorem taxes for Increment District No. 1, City of Guymon, in the amount of $448,589.53. The district court issued the writ on the same day. On June 17, 2002, the County moved to stay or vacate the writ and to grant the County summary judgment. The court ordered that the peremptory writ of mandamus continue in effect and that $448,589.53 be held in escrow until further order of the court. After hearings conducted on July 23, 24, and August 6, 2002, the court entered judgment on December 13, 2002, in favor of the City in the amount of $307,962.53. It further ordered the County to comply with 62 O.S. § 862 in the assessment, collection, apportionment, and disbursement of the ad valorem taxes for Increment District No. 1, City of Guymon. The County appealed asserting ten propositions of error. This Court granted the County's motion to retain.

## II. THE LOCAL DEVELOPMENT ACT

¶3 The City of Guymon established Tax Increment District No. 1 pursuant to the Local Development Act to generate revenue for financial assistance to Seaboard Corporation in its construction of a pork processing facility in the City of Guymon. The additional ad valorem tax generated by the new processing plant is committed to repayment of a $4.5 million bond issue.

¶4 The Legislature stated the purpose of the Local Development Act in 62 O.S.2001, § 851. The Act is used to put into practical effect Article 10 § 6C[4] of the Con-

---

1. Identified herein are only those counsel for the parties whose names appear on the briefs. Names of counsel representing entities seeking to appear *amicus curiae* are omitted since applications to so appear are denied.

2. The appellants are: Charles Butler, Chairman, Art Twombly, Member, and Joe Mayer, Former Member, Texas County Excise Board, Thyra Grounds, Texas County Treasurer, and Board of County Commissioners, Texas County, Oklahoma.

3. The Local Development Act has been amended multiple times since its enactment. The parties do not argue which version of the Act is applicable under the separate propositions, but cite, in most instances, to only the title and the applicable section. Because this controversy involves tax year 2001, we shall cite to 62 O.S.2001, §§ 850 et seq. unless otherwise noted. Parties to an appeal should cite statutes from the most recent decennial compilation, or to the latest supplement if the statute has been amended, unless another date applies to the controversy.

4. Article 10 § 6C provides:

"A. The Legislature, by law, may grant incorporated cities, towns, or counties the ability to provide incentives, exemptions and other forms of relief from taxation for historic preservation, reinvestment, or enterprise areas that are exhibiting economic stagnation or decline. Relief from taxes imposed by other local taxing jurisdictions shall only be allowed by contractual arrangement with the municipal or county governing body. The law shall require public hearings before such relief may be granted and shall provide for the local initiative power and referendum of the people. The Legislature may set limitations on the cumulative incentives and relief provided pursuant to the provisions of this section, the time period for the exemptions, the geographical area of the jurisdiction covered, the percentage of the tax base of the jurisdiction eligible for the relief programs, and threshold limits of investment credit and jobs created.

"B. The Legislature, by law, may authorize that the cities, towns, or counties may specifically use local taxes and local fees, in whole or in part, for specific public investments, assistance in development financing, or as a specific revenue source for other public entities in the area in which the improvements take place and may direct the

stitution of the State of Oklahoma. The Act provides for tax increment financing, a method through which portions of ad valorem taxes over a base assessed value may be dedicated to finance costs of approved project plans. *Oklahoma City Urban Renewal Authority v. Medical Technology & Research Authority of Oklahoma,* 2000 OK 23, ¶ 8, 4 P.3d 677, 682. 62 O.S.2001, § 853(9).

¶ 5 How tax increment financing is used by a city is described in the *Oklahoma City Urban Renewal Authority* case:

"Tax increment financing utilizing *ad valorem* taxes assumes that the assessed property value of the area will increase because of the development project and that, absent the project, property values would not rise. The financing plan is intended to create economically productive property where none presently exists by providing inducements for private commercial development. It allows the capture of local taxes generated by a new development instead of allocating the tax increments to the taxing entities."

*Oklahoma City Urban Renewal Authority,* 2000 OK 23, ¶ 9, 4 P.3d at 682, (footnotes omitted).

## III. FACTS AND CONCLUSIONS OF THE DISTRICT COURT

¶ 6 The district court made the following conclusions based on its findings of fact. The Guymon–Seaboard Economic Development Project and Increment District No. 1, City of Guymon, were adopted by the City to reverse the serious conditions of economic stagnation and decline existing in the City of Guymon and Texas County in the early 1990's. The project area was within a state-designated enterprise zone, which established its need for development and invest-

ment and eligibility for assistance using the tools of the Local Development Act.

¶ 7 Undisputed evidence established that the Guymon–Seaboard Economic Development Agreement has benefited the City and the County in direct positive impact by Seaboard's provision of health insurance benefits to all eligible employees, and annual payments of $175,000.00 for the benefit of the Guymon Independent School District for 25 years or until the termination of Increment District No. 1. The indirect positive impact included creation of 5,000 new jobs in Texas County, doubling of the ad valorem tax base of the County, more than doubling the tax base of the school district, more than 1,000 new residential units, county population increase of about 4,000, fifty percent reduction in the unemployment rate, and about fifty percent increase in per capita income.

¶ 8 The district court concluded that the Project Plan and Increment District were adopted and approved in compliance with the Local Development Act and the Constitution of the State of Oklahoma.

¶ 9 Additional facts are discussed relative to pertinent propositions of error.

## IV. CONSTITUTIONAL ISSUES

¶ 10 The County has raised three issues concerning whether the City's utilization of the Local Development Act violates Oklahoma's Constitution. This Court held the Local Development Act to be facially constitutional in *Oklahoma City Urban Renewal Authority v. Medical Technology & Research Authority of Oklahoma,* 2000 OK 23, 4 P.3d 677. The tax increment financing plan in the case at bar provides that the County is to assess and collect the ad valorem taxes for Increment District No. 1, City of Guymon,

apportionment of the taxes and fees specified in this subsection for the purposes specified in this section. The Legislature may establish for this subsection, the same procedures and limitations authorized in subsection A of this section.
"C. The Legislature, by law, may authorize any city, town, or county to plan, finance and carry out the development or redevelopment of areas determined by the governing body of such city, town, or county to be unproductive, undeveloped, underdeveloped or blighted. The authority of the county shall be limited to the unincorpo-

rated areas of such county but any city, town or county may by agreement jointly plan, finance or carry out a development plan with any other public or private entity for one or more development projects within their respective boundaries.
"D. Any city, town, or county may exercise the provisions of this section separately or in combination with powers granted by any other laws of this state."
Added by State Question No. 641, Legis. Ref. No. 287, adopted at election held November 6, 1990.

according to the Project Plan, adopting ordinance as amended, and directions of apportionment from the City of Guymon, pursuant to 62 O.S.2001, § 862.

¶ 11 "Generally, the provisions of a Constitution are construed using the usual rules of statutory construction." *Cowart v. Piper Aircraft Corp.*, 1983 OK 66, ¶ 4, 665 P.2d 315, 317. A constitutional provision must be construed as a consistent whole, in harmony with common sense and reason, and every part should be given effect if possible. *Poafpybitty v. Skelly Oil Co.*, 1964 OK 162, ¶ 13, 394 P.2d 515. It is not to be assumed that a constitutional provision contains excess verbiage, having neither force nor effect. *Cowart*, 1983 OK 66, ¶ 4, 665 P.2d at 317. The construction of a constitutional provision must not be so strict as to defeat the purpose of its adoption. *Lone Star Gas Co. v. Bryan County Excise Board*, 1943 OK 228, ¶ 2, 141 P.2d 83, 85.

¶ 12 A new constitutional provision that contains some of the same subject matter will suspend inconsistent former provisions whether or not those provisions are specifically mentioned. *In re Initiative Petition No. 259*, 1957 OK 167, ¶ 23, 316 P.2d 139, 144.

¶ 13 With these rules of construction in mind, we examine three constitutional provisions that the County asserts conflicts with the Local Development Act.

## A. Is the Project a Private Rather than a Public Project?

¶ 14 The basis of the County's arguments in its propositions I and VII are that the City is attempting to levy and collect taxes to pay for the construction of a private enterprise in violation of Article 10, § 14 of the Constitution,[5] and "62 O.S.Supp.1992, § 850 et seq." The County asserts that the project costs were not expenditures made upon public works, public buildings or public improvements, that the City is attempting to levy taxes for a private purpose. The district court found that the project qualified as a public project and the expenditures were for a public purpose. The County cites no authority except the Constitution and the 1992 enabling legislation of the Local Development Act.

¶ 15 In § 6C of Article 10, subsection A mentions "incentives, exemptions and other forms of relief from taxation for historic preservation, reinvestment, or enterprise areas that are exhibiting economic stagnation or decline." Subsection B authorizes cities, towns or counties to specifically use local taxes and local fees for assistance in developmental financing. Subsection C provides that any city, town or county may by agreement jointly plan, finance or carry out a development plan with any other public or private entity.

¶ 16 The Court held in *Burkhardt v. City of Enid*, 1989 OK 45, ¶ 9, 771 P.2d 608, 610–611 that the term public purpose is Article 10, § 14, should not be construed in a narrow or restricted sense and that public use merely required that the work was essentially public and for the general good of all the inhabitants of the taxing body.

¶ 17 A review of § 6C reveals it allows incentives, exemptions, and tax relief for private entities if the project itself has a public purpose. The Guymon–Seaboard Economic Development Project Plan and Increment District served public purposes by increasing the tax base, bringing new jobs to the City of Guymon and Texas County, elevating the median family income, bringing more children into the school district, and stimulating additional businesses within the Guymon Industrial Park.

¶ 18 The record reflects that the Guymon Industrial Authority owned the property in the Increment District, and the trial court so concluded. Since the Authority owned the

---

5. Okla. Const. art. 10, § 14 provides: " § 14. Levy and collection by general laws and for public purposes-Assumption of debts.
"Taxes shall be levied and collected by general laws, and for public purposes only, except that taxes may be levied when necessary to carry into effect Section thirty-one of the Bill of Rights.

Except as required by the Enabling Act, the State shall not assume the debt of any county, municipal corporation, or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion, or to suppress insurrection."

property at the time the improvements were made and the project costs were incurred, then the property in fact constituted public works and public buildings, because the Authority is a public trust. It subsequently sold the property to Seaboard.

¶ 19 *Sublett v. City of Tulsa,* 1965 OK 78, 405 P.2d 185, discussed public use and public purpose in great detail in connection with the project that culminated in the building of the Port of Catoosa. The City of Tulsa desired to develop an industrial park adjacent to what would become the Port. The plaintiff sought an injunction to prohibit bringing the bond issue to a vote of the people. He contended that the contemplated land acquisition and its development was for a private rather than a public purpose, and that it violated Article 10, §§ 14, 15 and 17 of the Oklahoma Constitution. This Court recognized that some states, including Oklahoma, authorized issuance of revenue bonds by the state, an agency thereof, or a political subdivision, to aid in attracting, acquiring and developing industry within the state. *Sublett,* 1965 OK 78, ¶ 24, 405 P.2d at 193. The Court cited decisions of other jurisdictions as demonstrating the modern theory of approving publicly financed industrial development programs as constituting a public use or purpose for municipal development that justified special treatment because of obvious public need. *Sublett,* 1965 OK 78, ¶ 30, 405 P.2d at 194–195.

¶ 20 The Court held that the acquisition of land in proximity to the Port of Catoosa was necessary to the successful development of the port and fell within the legal definition and requirements of a public use or purpose. The Court continued that taxes levied under the proposed ordinance would be expended for a public purpose within the meaning and intent of our Constitution, and that such an expenditure was neither a pledge of the state's credit, nor an appropriation of money in aid of private enterprise or for a private purpose. The Court concluded that the acquisition of land and the development for industrial purposes by the port authority with aid of funds derived from the proposed bond issue would not violate Okla. Const.

Art. 10, §§ 14, 15 and 17. *Sublett,* 1965 OK 78, ¶ 37, 405 P.2d at 196–197.

**B. Has the City Forced the County to Surrender its Power of Taxation or to Bind the County to a Debt in Violation of Okla. Const. Art. 10, §§ 5, 26?**

■ ¶ 21 For propositions VI and VIII, the County argues that in violation of §§ 5 and 26 of the Constitution, the City's ordinances in creating the Guymon–Seaboard Economic Development Project Plan and Increment District force the County to accept a smaller amount of taxes and that this results in the County's surrender of its power of taxation and in essence, a debt for the County that cannot be repaid within a year. The County observes that all of this has been accomplished without a vote of the people. Based on the rules of construction set out above, if the City enacted its ordinances in compliance with Article 10, § 6C, then its actions do not violate the Constitution. Section 6C is more recent than either §§ 5 or 26, and as a more recent pronouncement of the people, its provisions control.

¶ 22 The issue here is that which *Oklahoma City Urban Renewal* did not decide: whether the creation of the tax increment district requires permission of all taxing entities. *Oklahoma City Urban Renewal,* 2000 OK 23, ¶ 1, 4 P.3d at 679. The answer lies in the wording of § 6C.

¶ 23 Subsection C provides that any "city, town or county" may "plan, finance and carry out the development or redevelopment of areas determined by the governing body of such city, town, or county to be unproductive, undeveloped, underdeveloped or blighted." In this case, the City of Guymon took this step through its ordinances. Subsection C continues that "The authority of the county shall be limited to the unincorporated areas of such county...." An agreement is necessary for any joint development plan. One commentator observed:

"[T]he political subdivision establishing the increment district is the ultimate decisionmaker in capturing ad valorem tax revenue resulting from new investment. The other taxing entities do not contract or even resolve to accept deprivation of ad valorem

tax revenue. These other entities may comment and may cause an implementing city, town, or county to change its plan, but such change is a result of the public opinion and perception such entities may inspire, and is not due to any decision-making authority set out in the law. These entities do have approval power of any use of any other local taxes or fees." [6]

We agree. Title 62 O.S.2001, § 861(A) [7] provided that the base assessed value of ad valorem taxes from the increment district would be apportioned to each taxing entity. 62 O.S.2001, § 861(A)(1).[8] The increment above the base amount was to be paid to the city, town or county approving the plan. 62 O.S.2001, § 861(A)(2).[9] This wording is consistent with Okla. Const. art. 10, § 6C. The Local Development Act does not require an annual appropriation by each of the taxing entities, nor does the Oklahoma Constitution.

¶ 24 Both the City and the County, the parties to this action, were represented fully by their designated parties on the Review Committee that unanimously approved the Project Plan. Without the project itself, there would be no tax increment, and no new tax revenues generated in the area designated as Tax District No. 1. The trial court properly found that the consent of the affected tax entities is not required for the approval of a project plan or the establishment of an increment district.

## V. STATUTORY ISSUES

■ ¶ 25 Proposition II argues that the desired investment, development and economic growth would likely have occurred even without the tax increment district. The County cites 62 O.S.Supp.1992, § 852(2), 1992 Okla.Sess.Laws, c. 342, § 3, which provides:

"It is the intent of the Legislature that the provisions of this act be used in accordance with the following guidelines ...

"2. That the tools of this act not be used in areas where investment, development and

---

**6.** Vincent, Brenda, *Tax Increment Financing And Similar Incentives Stimulate Oklahoma's Economy*, Journal of Multistate Taxation, (June 2001), 2001 WL 670173 (Westlaw 2004).

**7.** 62 O.S.2001, § 861 has been amended by 2003 Okla.Sess.Laws, ch. 255, § 7.

**8.** 2000 Okla.Sess.Laws, ch. 351, § 4(A)(1) provided:

"A. A project plan may contain a provision that the increments from certain local taxes or fees may be used to finance project costs in areas qualified under the Local Development Act. The increment from local taxes or fees levied from and after the effective date of the approval of such plan shall be apportioned in the following manner for a period not to exceed twenty-five (25) years or the period required for payment of project costs, whichever is less:

"1. That portion of the ad valorem taxes which are produced by the levy at the rate fixed each year by or for each such ad valorem taxing entity upon the base assessed value of the increment district determined pursuant to Section 862 of this title and as to an area later added to the increment district, the effective date of the addition to the increment district, shall be paid to each taxing entity and all or any portion of local sales taxes, other local taxes or local fees collected each year which are not subject to apportionment shall be paid or retained as otherwise provided by law; and ..."

**9.** 2000 Okla.Sess.Laws, ch. 351, § 4(A)(2) provided:

"2. All or any portion of:
"a. ad valorem taxes, in excess of such amount specified in paragraph 1 of this subsection,
"b. the increment of local sales taxes, other local taxes or local fees, or a combination thereof, paid to or for the benefit of the city, town, or county approving the plan, and
"c. with its consent, evidenced by agreement in writing, the increment of local sales tax, other local taxes or local fees, or combination thereof, payable to any other local public taxing entity, "shall be apportioned to, and when collected, shall be paid into an apportionment fund established for the project pursuant to the project plan. Such revenues shall be used for the payment of the project costs and for the payment of the principal of, the interest on, and any premiums due in connection with the bonds of, loans, notes, or advances of money to, or indebtedness incurred to finance project costs, whether funded, refunded, assumed, or otherwise, for financing, in whole or in part, eligible project costs. Nothing shall prohibit the increments from being used to directly pay eligible project costs. When all eligible project costs and such bonds, loans, advances of money or indebtedness, if any, including interest thereon and any premiums due in connection with them, have been paid and the governing body adopts an ordinance or resolution dissolving the tax apportionment financing, all ad valorem taxes upon the taxable property within the boundary of such district shall be paid into the funds of the respective taxing entities."

economic growth would have occurred anyway and that the governing body take care to exclude areas that do not meet this criteria...."

¶ 26 The County argues a factual question that the trial court found against them. The court specifically found that the economic growth and investment experienced by Guymon and Texas County since 1993 would not have occurred without the measures taken under the Act. The County fails to show how the trial court abused its discretion. We therefore affirm the trial court's decision.

¶ 27 For proposition III, the County asserts that 62 O.S.Supp.1992, § 855, 1992 Okla.Sess.Laws, ch. 342, § 6,[10] requires a member of the Texas County Excise Board, the Texas County Assessor, and the Texas County Treasurer to be on the review committee. The trial court in its Journal Entry of Judgment correctly cited 1992 Okla.Sess. Laws, c. 342, § 4, codified as § 853(17) of title 62 in the original act. That subsection defines "taxing entity" as "a city, town, county, school district, political subdivision or other local entity in which local taxes or fees are levied by or on its behalf." The parties named are not taxing entities even though they work for the county. The county was represented by a county commissioner. This proposition is without merit.

¶ 28 Proposition IV contends that the County was entitled to a written agreement with the City before the tax increment district became effective. We have already addressed this argument above. Consent of the affected tax entities is not required for the approval of a project plan or the establishment of an increment district. If consent is not required, clearly no written agreement is required.

¶ 29 Proposition V maintains that the City failed to heed the advice of the Oklahoma State Bond Advisor. Title 62 O.S.2001, § 863(J) provides: "All bonds issued pursuant to the provisions of this section shall be reviewed by the Oklahoma State Bond Advisor who will give a recommendation on such bonds to the issuing entity." The County quotes from a letter from the State Bond

Advisor stating his opinion that the statutory requirements had been satisfied, but that the constitutionality of the particular issue had not been addressed in the courts. The letter suggested careful consideration of the consequences of the legal issues and that the potential liability be discussed with bond counsel. The County fails to show what, if any, recommendation was not followed, and cites no authority and no argument concerning how any alleged failure prejudices the project. This proposition is meritless.

## VI. MOTION FOR NEW TRIAL

¶ 30 In a two sentence argument, the County claims error for the trial court to deny its motion for a new trial. This Court has found against the County on every proposition of error, therefore the trial court did not err in denying the County's motion.

## VII. MOTION FOR STAY

¶ 31 The County contends that the trial court committed reversible error in denying its motion to stay execution of its writ of mandamus. We disagree. The record before us establishes that the City showed irreparable harm would have resulted if the trial court stayed the execution of the writ.

## CONCLUSION

¶ 32 Based on the record before us, we determine that each of the County's contentions lacks merit. We hold that the City's creation of the Guymon–Seaboard Economic Development Project Plan and Increment District complied with provisions of the Constitution of Oklahoma and The Local Development Act. The trial court did not err in denying the County's motions for new trial, and stay. Neither did the court err in granting the City a writ of mandamus against the County.

¶ 33 Finally, all motions for leave of court to appear amicus curiae are denied. The County's motion for oral argument is denied. The City's motion to strike the County's reply brief because the County injected a new issue not raised in its motion for new

---

10. Superceded by 2003 Okla.Sess.Laws, c. 255, § 3.

trial or petition in error, is granted in part. The Article 10, § 6B argument (section III of the reply) and supporting attachments have not been considered as they are violations of Okla.Sup.Ct.R. 1.11(i). They are hereby stricken.

## THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

Concur: WATT, C.J., HODGES, LAVENDER, HARGRAVE, KAUGER, BOUDREAU, EDMONDSON, JJ.

Concurs in part; Dissents in part: OPALA, V.C.J.

