2004 OK 51

**In the Matter of the APPLICATION OF THE OKLAHOMA DEVELOPMENT FINANCE AUTHORITY for Approval of $2.25 Million the Oklahoma Development Finance Authority Public Facilities Program Tax Apportionment Bonds, Series 2003 (Ardmore Airpark Increment District Project).**

**No. 99,803.**

Supreme Court of Oklahoma.

June 22, 2004.

---

Daniel E. McMahan, Oklahoma City, OK, for Applicant Oklahoma Development Finance Authority.

Jerry R. Fent, Oklahoma City, OK, Pro Se Respondent.

Lynn C. Rogers, Assistant Attorney General, Oklahoma City, OK, as Intervenor on Behalf of the State of Oklahoma.

HARGRAVE, J.

¶ 1 The Oklahoma Development Finance Authority has filed an application asking this Court to assume original jurisdiction and approve $2.25 million in public facilities program tax apportionment bonds to be used for improvements in the Ardmore Airpark Increment District Project. Jerry R. Fent, a resident taxpayer of the State of Oklahoma, filed a protest to the bond issue, arguing as a preliminary matter that the bonds had not been approved by the Council of Bond Oversight, as required by 62 O.S.2001 § 695.1. By order dated December 15, 2003, we directed the applicant to obtain the approval of the Council of Bond Oversight, and granted pro-

tester Jerry R. Fent leave to file a brief within thirty days from the date of such approval. The approval was obtained and the applicant sought and was granted permission to supplement the record to include such approval. The Attorney General was granted leave to intervene and file a brief. Briefs and responses have been filed. Protester Fent's motion to strike the applicant's response is denied.

¶ 2 The City of Ardmore, Oklahoma created a tax increment district pursuant to the Local Development Act, for public improvements to the Ardmore Airpark. The proposed increment district was eligible for designation as a tax increment district because the project area within which it is located was approved by the Oklahoma Department of Commerce as an enterprise zone pursuant to 62 O.S. § 690.3 et seq., and is therefore an "enterprise area" under the Local Development Act, 62 O.S.2001 § 853 et seq. Applicant's brief states that the project will be financed from public sources, including apportionment of ad valorem tax increments within the proposed district. The ad valorem taxes to be apportioned are those generated as the result of increases in ad valorem tax revenue occurring with the development of the increment district. Those taxes will be segregated and apportioned to pay public costs associated with the project.[1]

¶ 3 The City Commission of the City of Ardmore, Oklahoma, by Ordinance No. 2637 approved and adopted the Ardmore Tax Increment Finance Project Plan on February 22, 2000. The ordinance authorized the Ardmore Development Authority (ADA), a public trust, to administer the project plan. The ordinance established the Tax Apportionment Fund, declared the apportionment funds to be funds of the ADA, and authorized the ADA to assist in carrying out the project plan. Section 9 of the ordinance provided for the apportionment of ad valorem taxes in the district:

"Section 9: The increment of ad valorem taxes, as defined by the Local Development Act, 62 O.S. Supp.1992 § 851, et seq. from Increment District Number One, City of Ardmore, Oklahoma, in excess of ad valorem taxes generated by the base assessed value of the increment district, as most recently determined by the County Assessor prior to the effective date of this ordinance, *shall be apportioned and the Project Plan (sic) for a period not to exceed 25 years from the effective date of the approval of the Project Plan,* or the period required for the payment of the project costs authorized pursuant to Section VIII of the Project Plan, whichever is less." (emphasis added)

¶ 4 After Ordinance No. 2637 was adopted, this Court handed down its opinion in *Oklahoma City Urban Renewal Authority v. Medical Technology and Research Authority of Oklahoma, et al., 2000 OK 23, 4 P.3d 677,* which interpreted the Local Development Act and held that an ordinance passed by the City of Oklahoma City, which contained language similar to the above, created a prohibited debt within the meaning of article 10 § 26 of the Oklahoma Constitution. In response to *Urban Renewal,* the legislature amended the Local Development Act. The *post-Urban Renewal* amendments to the Local Development Act were enacted by Laws 2000, c. 351 § 5.[2] Title 62 O.S.2001 § 856(C) specifically provides that it is the intention of the Legislature, in adopting the Act, that no long-term contractual obligation be created by the mere adoption of an ordinance or resolution establishing an increment district,

1. Findings of the Ardmore Tax Increment District Finance Review Committee. The eligible costs include: 1) costs of implementing and administering the plan, including but not limited to, professional service costs, financing costs and fees, administrative costs, organizational costs, etc.; 2) costs of installation and or improvement of utilities including, but not limited to, water, sewer, gas and electric facilities; 3) costs of acquisition and/or renovation of land, structures, facilities, buildings and improvements; and 4) miscellaneous costs and/or reimbursements of costs advanced in preparation and approval of the plan.

2. We are here considering 62 O.S.2001 § 850 et. seq. The act has been subsequently amended. For example, amendment to sec. 859 appears at Laws 2002 ch. 476 § 2; subsequent amendments to sections 853, 854, 855, 856, 858, 859, 861, 862, 863 and 867 appear at Laws 2003, ch. 255; subsequent amendment to sections 853 and 856 at Laws 2003 ch. 433 §§ 6, 7.

and that an ordinance or resolution establishing an increment district shall constitute a legislative act and may be repealed, modified or amended *at any time during the term of the district,* by subsequent action of the governing body.[3]

¶ 5 In order to comply with *Okla. City Urban Renewal* and the amended Local Development Act, the City of Ardmore amended Ordinance No. 2637 by the adoption of Ordinance 2700 on December 27, 2001. Ordinance No. 2700 renamed the district the Ardmore Airpark Increment District. Section 9 of the ordinance was amended in its entirety. The previous section had provided that taxes "shall be apportioned" for a period of twenty-five years—the same language that was rejected in *Okla. City Urban Renewal.* The new section 9 provides:

"Section 9. *In accordance with the provisions of the Local Development Act, 62 O.S. Supp.1999 § 850 et seq.*[4] (the "Local Development Act"), increments of ad valorem taxes generated within the Ardmore Airpark Increment District, *as such increments are determined and defined by the Local Development Act,* are hereby apportioned and set aside from all other ad valorem taxes levied within the Ardmore Airpark Increment District, to be used exclusively for:

i. the payment of "project costs" (as defined in the Local Development Act) incurred in connection with the development, acquisition or construction of those projects listed in the "Ardmore Tax Increment Finance Project Plan" (herein the "Project Plan"), and

ii. The reimbursement of the City, or any agency thereof which has paid "project costs" from funds which were not increments derived from the Ardmore Airpark Increment District, but only to the extent that sums were actually paid; and

iii. The payment of principal, interest and premium, if any, on any "tax apportionment" bonds or notes: issued pursuant to Section 863 of the Local Development Act and this Ordinance, the proceeds of which are to be used in accordance with clauses (i) or (ii) above.

The apportionment of ad valorem taxes pursuant to this section shall terminate upon the final payment of, or reimbursement for, all "project costs" incurred ... and the payment of all outstanding principal, accrued interest and premium due on any tax apportionment bonds or notes issued hereunder; provided, however, that in no case shall the apportionment of revenues pursuant to this Ordinance extend beyond fifteen (15) years from the original effective date of this Ordinance, unless such period is modified by subsequent action of the City Commission. In determining this fifteen (15) year period, it is the *intention* of the City Commission that the Ardmore Airpark Increment District shall

---

3. Section 856(C) provides:

It is the intention of the Legislature in adopting the Local Development Act that no long-term contractual obligation be created by the mere adoption of an ordinance or resolution establishing an increment district. Notwithstanding any provision contained in an ordinance, resolution or project plan, an ordinance or resolution establishing an increment district shall constitute a legislative act and may be repealed, modified or amended at any time during the term of the increment district, by subsequent action of the governing body. However, nothing in the Local Development Act shall restrict the ability of:
   1. Any city, town or county to:
   a. Issue debt in accordance with the applicable provisions of Article X of the Oklahoma Constitution, and any statutes enacted in connection therewith, and
   b. Use incremental revenues derived from an increment district to pay principal, interest

or premium associated with such indebtedness; or
   2. Any public entity, other than a city, town or county to:
   a) issue tax apportionment bonds or notes in accordance with Section 863 of this title or to issue other types of revenue bonds or notes in accordance with other applicable provisions of Oklahoma law, and
   b) use incremental revenues derived from an increment district to pay principal, interest or premium associated with such indebtedness. Laws 2000, ch. 351 § 2.

4. This citation to Supp.1999 is in error. The amended ordinance was adopted on Dec. 27, 2001 and recites that it is enacted to ensure compliance with *Okla. City Urban Renewal Authority,* and amendments made by the legislature in May 2000 to the Local Development Act by House Bill 2635 pursuant to the *Okla. City Urban Renewal Authority* case.

not terminate until the increments apportioned during the fifteenth year are actually received by the apportionment Fund ..." (emphasis added)

¶ 6 Section 10 of the ordinance was amended to provide:

"During the period of apportionment, and subject to the City's right to subsequently repeal, modify or amend this Ordinance, the increments apportioned hereunder shall be transferred by the respective taxing authorities to the [Fund], which fund shall be held by and be the property of, the Ardmore Development Authority ... No portion of such increments and no portion of the apportionment Fund shall constitute a part of the general fund of the City of Ardmore."

¶ 7 Section 12 of the ordinance provides, among other things:

".....In authorizing the irrevocable pledging of such increments [by the ADA], it is the *express intention* of the City Commission that the Ardmore Airpark Increment District will remain in place until all of the outstanding principal, accrued interest and premium, if any, on such tax apportionment bonds or notes have been paid in full. *Notwithstanding such intention, the City, by these provisions, does not waive any right which it has now or in the future, to repeal, modify or amend this Ordinance* ... as provided in Section 856(C) of the Local Development Act. In adopting this Ordinance, the *City does not purport to create any contractual obligation extending beyond the City's current or any subsequent fiscal year with regard to the establishment or maintenance of the [District]; or the apportionment of ad valorem tax increments.* All tax apportionment bonds or notes issued pursuant to this section shall state that such bond or note is not a debt, general or special, liability or obligation of the City of Ardmore, the State of Oklahoma or any other agency or authority of either, other than the [ADA] ...." (emphasis added)

¶ 8 The trustees of the Ardmore Development Authority (ADA) adopted, on January 28, 2002, a resolution authorizing the ADA to issue a tax apportionment note in an amount not to exceed $2,250,000.00 and waiving competitive bidding on the sale of the note. The note was authorized to be sold on a negotiated basis at par to the Oklahoma Development Finance Authority. The Resolution provides that "the Note shall not constitute an obligation of the City of Ardmore, the State of Oklahoma or any political subdivision or agency there, or a personal obligation of the Authority or its trustees. The note. shall be a limited obligation of the ADA, payable solely from and secured by the Trust Estate established under the General Bond Indenture." The Resolution was approved by the Ardmore City Commission during regular session on Feb. 4, 2002.

¶ 9 A tax apportionment note between the Ardmore Development Authority (ADA/Issuer) and the Oklahoma Development Finance Authority (ODFA) is included in the record submitted. ADA promises to pay ODFA, only from the sources and as therein provided, the principal sum of $2,250,000.00 for the purposes of financing all or a portion of the cost of certain improvements within the Ardmore Industrial Airpark. The note is payable solely from: 1) Increment Revenues derived or to be derived from the "Ardmore Airpark Increment District" and deposited into the Apportionment Fund, all as provided in the Indenture and the Local Development Act; 2) the funds and accounts held under and pursuant to the Indenture and pledged therefor; and 3) other income, revenues and receipts received by the Issuer from any other sources as a result of the investment or expenditure of the proceeds derived from the issuance of the Note, including but not limited to other monies that may be made available to the Issuer and pledged in the manner prescribed by the Indenture.

¶ 10 The note likewise provides that it is not a liability or debt, legal or moral, or an obligation, general or special, of the State of Oklahoma or of the City of Ardmore within the meaning of any constitutional or statutory provisions whatsoever. The Note further provides that it does not give rise to a charge against or claim upon the general credit or taxing powers of the City of Ardmore, Oklahoma or upon the revenues or resources of the State of Oklahoma, and is not payable

except as provided by the Local Development Act. The Note states, in large capital letters: "The Issuer has no taxing power."

¶ 11 The General Bond Indenture is to be entered into between the Ardmore Development Authority and BancFirst as trustee. The Bond Indenture provides for the authorization and issuance of bonds; each bond shall recite in substance that it, including the interest thereon, is payable solely from the Trust Estate, inclusive of the Increment Revenues pledged for the payment thereof. It further states that the bonds shall not constitute a debt or obligation of the City of Ardmore, State of Oklahoma, or of any county or any political subdivision thereof and neither the faith and credit nor the taxing power of the City of Ardmore, the State of Oklahoma, or any other political subdivision is pledged to the payment of the principal and interest on such bonds. The Trust Estate is defined as: 1) all rights, title and interests of the ADA in and to the Increment Revenues; 2) all rights title and interest of the ADA in and to the Security Agreement; and 3) all funds and accounts created by the Indenture, as supplemented and amended, pledged to the Trustee under the Indenture as security for the Bonds.

¶ 12 The City of Ardmore signed a Security Agreement with the Ardmore Development Authority. The Security Agreement states that it is entered into in order to secure payment of the bonds and provide assurance that the tax increment revenues will be received by the ADA. Section 2 of the agreement provides that the City has agreed that, in consideration of the ADA issuing bonds for the purpose of developing, acquiring and constructing the Ardmore Airpark projects, the increment revenues will be paid directly to the ADA for deposit into the apportionment fund created under the General Bond Indenture. Section 5 provides

that under Oklahoma law, *the City may not become obligated to transfer money beyond its fiscal year and that therefore the covenants to transfer made by the City shall be on a year-to-year basis to be renewed by the annual appropriation for additional one-year periods on July 1 of each year until the principal and interest on all Bonds issued under the Indenture have been paid* or the apportionment of the increment revenue has ended.

## DISCUSSION

¶ 13 This Court previously found ad valorem tax increment financing to be facially constitutional in *Okla. City Urban Renewal Auth. v. Medical Auth., 2000 OK 23, 4 P.3d 677.* The Local Development Act was enacted to implement the provisions of Article 10, § 6C of the Oklahoma Constitution, which was adopted at an election held on November 6, 1990.[5] Article 10 § 6C gives the legislature the authority to grant incorporated cities, towns or counties the ability to provide incentives, exemptions and other forms of tax relief for historic preservation, reinvestment or enterprise areas that are exhibiting economic stagnation or decline. Subsection (B) of § 6C allows the legislature to authorize cities, towns or counties to "use local taxes and local fees, in whole or in part, for specific public investments, assistance in development financing, or as a specific revenue source for other public entities in the area in which the improvements take place." The city, town or county may direct the apportionment of the taxes and fees specified in the subsection for the purposes specified in the section.

¶ 14 Subsection (C) of Article 10, § 6C provides that the legislature may authorize any city, town or county to plan, finance and carry-out the development or redevelopment

**5.** Article X sec. 6C provides, in pertinent part;

" § 6C. **Tax relief for historic preservation, reinvestment or enterprise areas-Economic stagnation or decline-Use of local taxes and fees for public investments-Development or redevelopment of unproductive, etc. areas.**
\* \* \*

B. The Legislature, by law, may authorize that the cities, towns, or counties may specifically use local taxes and local fees, in whole or

in part, for specific public investments, assistance in development financing, or as a specific revenue source for other public entities in the area in which the improvements take place and may direct the apportionment of the taxes and fees specified in this subsection for the purposes specified in this section. The Legislature may establish for this subsection, the same procedures and limitations authorized in subsection A of this section."

of areas determined by the governing body of such entity to be unproductive, undeveloped, underdeveloped or blighted. The city, town or county may by agreement jointly plan, finance or carry-out a development plan with any other public or private entity for one or more development projects within their respective boundaries. Section (D) of § 6C provides that any city, town or county may exercise the provisions of the section separately or in combination with powers granted by any other laws of this state.

¶ 15 The objective of tax increment financing is to use increased ad valorem tax revenue generated by the development project to pay the principal and interest on the tax increment bonds. *Okla. City Urban Renewal v. Medical Authority at p. 683.* Tax increment financing using ad valorem taxes assumes that the assessed property value of the increment area will increase because of the development project and that, absent the project, property values would not rise. *Id.* The plan is intended to create economically productive property where none presently exists by providing inducements for private commercial development. *Id.* For the purposes of allocation of ad valorem taxes, the Act requires that a base assessed value be established on all taxable real property within the boundaries of an increment district and that the amount of ad valorem taxes in excess of the base assessed value is the "increment" paid to an apportionment fund established for the purpose of payment of project costs, including retirement of principal, interest or premiums due in connection with bonds, loans notes or other indebtedness incurred to finance project costs. *Id.*

¶ 16 In *Okla. City Urban Renewal Auth. v. Medical Auth., 2000 OK 23, 4 P.3d 677,* we held that the ordinance in question created a debt because it attempted to bind future legislative bodies to make apportionments through a clear promise that the payments would continue for a period of up to twenty-five years. *Okla. City Urban Renewal at 687.* We said that "[a]bsent a repeal of the ordinance [which is not anticipated by the Act until all project costs have been satisfied or 25 years have passed], the municipality is obligated to apportion taxes to retire tax increment bonds for perhaps as long as twenty-five years." *Id. at 686.*

¶ 17 We distinguished the ordinance in *Okla. City Urban Renewal,* which provided that monies "shall be apportioned" for a period not to exceed twenty-five years, and was therefore an unconditional pledge of the funds, from language that had been approved in *Matter of the Application of Capitol Improvement Authority, 1998 OK 25, 958 P.2d 759, cert. den. 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998),* where there was a mere expression of the "intent" to continue payments. In *App. of Capitol Improvement Auth.,* we held that highway improvement bonds were not "debts" within the meaning of article 10 § 25 because future legislatures were not bound to appropriate funds for their retirement. The full faith and credit of the state was not pledged where the legislature had expressed its intent to appropriate monies to retire the debt created, because there was the *prospect but not the promise* of future appropriations. *Id at p. 687.*

¶ 18 The amendments to the Local Development Act and Ordinance No. 2700 do not contain the offending language of *Okla. City Urban Renewal Auth.* that "purported to bind future city councils by requiring that the tax increment district be left in place until after the bonds had been repaid." Here, the ordinance creating the tax increment district can be revoked or amended at any time by subsequent action of the governing body. The City of Ardmore amended its ordinance creating the increment district to comply with the amendments to the Local Development Act and remove language that would have obligated the City to apportion the ad valorem tax increments for up to twenty-five of years. The amended ordinance incorporates the provisions of the Local Development Act by reference, and recognizes that the ordinance and tax increment district can be revoked or amended at any time by the subsequent actions of the City Commission. Ordinance 2700, section 9.

¶ 19 Recently, this Court found constitutional a tax increment district created by the City of Guymon. In *City of Guymon v. Butler, 2004 OK 37, 92 P.3d 80,* (mandate issued June 17, 2004), we rejected an attack

on Increment District No. 1, City of Guymon, finding that it did not create a prohibited debt within the meaning of Okla. Const., Art. 10 § 26. In *City of Guymon* the Board of County Commissioners of Texas County contended that the ad valorem tax increment district created by the City Of Guymon under the Local Development Act was unconstitutional because, among other things, it created a prohibited debt within the meaning of Art. 10 § 26 of the Oklahoma Constitution. The City of Guymon and the Guymon Industrial Authority sought a writ of mandamus ordering the Board of County Commissioners to disburse a tax increment in the amount of $448,589.53 and to strictly comply with section 862 of the Local Development Act for the duration of Increment District No. 1, City of Guymon.

¶ 20 In that case, as in the case at bar, the ordinance creating the increment district had been amended in order to comply with *Oklahoma City Urban Renewal.* We affirmed the trial court's decision that the Project Plan and Increment District were adopted and approved in compliance with the Local Development Act and the Oklahoma Constitution against a challenge by the County that the City's ordinances were in violation of Art. 10 § 26.[6] We said that if the City enacted its ordinances in compliance with Art. 10 § 6C, its actions did not violate the Constitution. *City of Guymon, 2004 OK 37 at ¶ 21.*

¶ 21 *City of Guymon v. Butler* approved a tax increment district where the ordinance was amended to remove the offending language of *Okla. City Urban Renewal Authority*. In *Okla. City Urban Renewal v. Medical Authority*, we said that the question presented when Art. 10 § 26 is considered is "whether the municipality incurs a financial obligation after the year contracted to be paid

from taxies levied and collected in subsequent fiscal years."

■ ¶ 22 In the case at bar, the City has not obligated itself to transfer money beyond its fiscal year, and the covenants to transfer are to be on a year-to-year basis, to be renewed by the annual appropriation for additional one-year periods on July 1 of each year until the principal and interest on the bonds has been paid or the apportionment has ended.[7] The ordinance can be amended or the increment district terminated at any time by action of a subsequent governing body. We find that, under the authority of *City of Guymon v. Butler,* the tax increment district adopted by the City of Ardmore complies with provisions of the Oklahoma Constitution and the Local Development Act.

■ ¶ 23 As to the bonds, the ADA is the sole entity liable for repayment. Section 863(G) of the Local Development Act provides that a tax apportionment bond or note issued pursuant to the provisions of that section is not a debt, liability, or obligation of the city, town or county creating or approving the plan, project or increment district. That section specifically provides that the bond does not give rise to a charge against the general credit or taxing powers of such city, town or county and is not payable except as provided by the Local Development Act. Bonds or notes issued pursuant to the provisions of section 863 are not general obligations of the state and have no claim on the revenues or resources of the state. A bond or note issued pursuant to the provisions of section 863 must state those restrictions on its face.

¶ 24 The obligation to repay the bonds lies solely on the Ardmore Development Authority, a public trust; not on the City of Ardmore. Previous decisions of this Court have

---

6. The County argued that the City's ordinances creating the Project Plan and Increment District forced the county to accept a smaller amount of taxes, which results in the County's surrender of its power of taxation and is in essence a debt for the county that cannot be repaid within a year, and that all of this was accomplished without a vote of the people. 2004 OK 37 ¶ 21, 92 P.3d 80.

7. Section 5 of the Security Agreement between the City and the ADA provides:

"It is hereby acknowledged that under Oklahoma Law, the City may not become obligated to transfer money beyond its fiscal year (July 1 through June 30) and therefore the covenants to transfer made herein by the City shall be on a year-to-year basis to be renewed by the annual appropriation for additional one year periods on July 1 of each years until such time as the principal of and interest on all Bonds issued under the Indenture have been paid or the apportionment of the Increment Revenue has ended."

held that the indebtedness by the issuance of revenue bonds under a public trust is the indebtedness of the trust, not the City and that a public trust does not violate Art. 10 § 26. *See, Grimes v. City of Oklahoma City, 2002 OK 47* ¶¶ *19, 20, 49 P.3d 719, 726–727; Arthur v. City of Stillwater, 1980 OK 64, 611 P.2d 637, 641. See also, Morris v. City of Oklahoma City, 1956 OK 202* ¶ *23, 299 P.2d 131, 136–137.*

### REMAINING ISSUES

¶ 25 This Court recently decided, in *City of Guymon v. Butler, 2004 OK 37, 92 P.3d 80,* that the consent of each of the taxing jurisdictions levying ad valorem taxes within a tax increment district is not required by Art. 10 § 6C. Protester Jerry Fent raises several arguments which are addressed to the ODFA's issuing the bonds. In essence, Fent's argument is that the ODFA's issuing of the bonds on behalf of the Ardmore Development Authority implicates the State of Oklahoma.

¶ 26 Protester Fent argues that ODFA's issuing the bonds violates Okla. Const. Art. 10 § 9, which prohibits ad valorem taxes being used for a state purpose; that the "trust" corporate veil of the Oklahoma Development Authority as an entity separate from the State should be pierced; that the state cannot loan money or extend credit to any municipality or political subdivision of the state; that the State cannot assume the debt of a municipality; and that Art. 10, § 6 C applies only to cities and towns and not to the State.

¶ 27 Having reviewed the transaction before us, we find that the credit of the state is not implicated by the City of Ardmore's ad valorem tax increment district and that therefore Fent's arguments are without merit. Title 74 O.S.2001 § 5062.10 authorizes the ODFA, which is a public trust, to purchase obligations of political subdivisions throughout the state. Title 60 O.S. § 176.1(A)(2) specifically provides that a public trust shall be presumed for all purposes of Oklahoma law to exist as a legal entity separate and distinct from the settlor and from the governmental entity that is its beneficiary.

¶ 28 The issuance of the bonds on behalf of the Ardmore Development Authority is not for a "state purpose" and the proceeds from the bonds will not be used for any project that is owned or created by the state. There is nothing in any of the instruments before us in the record to indicate than any of the ad valorem tax revenue will be used for any state purpose. The approval of the ODFA-issued bond by the governing body of the ODFA states that the bond proceeds shall be used for the purpose of paying or reimbursing the Ardmore Development Authority for the costs of establishing a rail spur and related projects in Ardmore, Oklahoma.

¶ 29 The ODFA characterizes the transaction as a "conduit transaction" whereby the buyer of the bonds looks only to the ADA for repayment of the bond principal and interest. The Resolution adopted by the directors of the ODFA on October 31, 2001 states that the ADA requested the ODFA to issue its bonds to fund a rail spur and related projects in the Ardmore Industrial Airpark in Ardmore, Oklahoma.

¶ 30 Section 863(G) of the Local Development Act specifically provides that a tax apportionment bond issued pursuant to its provisions are not general obligations of the state and have no claim on the revenues or resources of the state. Any bond or note issued under section 863 must state those restrictions on its face. The bond proceeds are for a project of the City of Ardmore, authorized under the Local Development Act and Okla. Const., Art. 10 § 6C, operated by the Ardmore Development Authority. That the ODFA will issue the bonds does not change the nature of the project.

### CONCLUSION

¶ 31 We find that the tax increment district created by the City of Ardmore complies with the Oklahoma Constitution, Art. 10 § 6C and the Local Development Act. Under the Local Development Act, the tax increment district created by the City of Ardmore may be repealed or amended at any time by the action of a subsequent governing body and the City is not obligated to apportion ad valorem taxes beyond its fiscal year. Only

the ADA, a public trust, is indebted on the bonds and, as a public trust, its debt does not violate Art. 10 § 26.

**ORIGINAL JURISDICTION ASSUMED; PROPOSED BOND ISSUE APPROVED.**

¶32 CONCUR: WATT, C.J., HODGES, HARGRAVE, KAUGER, WINCHESTER, EDMONDSON, JJ.

¶33 CONCUR IN DEFERENCE TO STARE DECISIS: OPALA, V.C.J., LAVENDER, J.

¶34 DISSENT: BOUDREAU, J.