Dear Representatives Reynolds and McAffrey:
This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Local Development Act, 62 O.S. 2001 Supp. 2008, §§ 850 — 869 ("Act") permit a Tax Increment Financing ("TIF") district to be amended? May the boundaries of a TIF district be changed and property removed from one TIF district and added to another TIF district, where the conditions establishing eligibility of the area are met and all other provisions of the Act are followed?
 2. Does the Act permit a TIF district to be formed completely or partially within the geographic boundary of an existing TIF district? If so, can the justification for its creation be the same as for the original district?
 3. Does the Act permit a TIF district to be established within a state-designated enterprise zone?
 4. Does the Act authorize the apportionment of local sales taxes generated by new development in a sales TIF district? If an entity in a sales TIF district purchases items that are subject to the state sales tax and any applicable locally imposed sales tax and incorporates the items as improvements in real property located in the sales TIF district, does the Act authorize the sales tax revenues to be apportioned if the sale took place outside the geographic boundary of the TIF district? *Page 2 
 TAX INCREMENT FINANCING
Tax Increment Financing ("TIF") was approved by the people of the State of Oklahoma with their adoption of State Question 641 on November 6, 1990, which added Article X, Section 6C to the Oklahoma Constitution. H.J. Res. 1015, 42nd Leg., 2d Reg. Sess. (Okla. 1990). The provision was amended by State Question 707 on November 2, 2004, and currently provides:
 A. The Legislature, by law, may grant incorporated cities, towns, or counties the ability to provide incentives, exemptions and other forms of relief from taxation for historic preservation, reinvestment, or enterprise areas that are exhibiting economic stagnation or decline. Relief from taxes imposed by other local taxing jurisdictions shall only be allowed by contractual arrangement with the municipal or county governing body. The law shall require public hearings before such relief may be granted and shall provide for the local initiative power and referendum of the people. The Legislature may set limitations on the cumulative incentives and relief provided pursuant to the provisions of this section, the time period for the exemptions, the geographical area of the jurisdiction covered, the percentage of the tax base of the jurisdiction eligible for the relief programs, and threshold limits of investment credit and jobs created.
 B. The Legislature, by law, may authorize that the cities, towns, or counties may specifically use local taxes and local fees, in whole or in part, for specific public investments, assistance in development financing, or as a specific revenue source for other public entities in the area in which the improvements take place and may direct the apportionment of the taxes and fees specified in this subsection for the purposes specified in this section. A direction of apportionment may be prospective and may continue for one or more years, and apportioned tax increments may be pledged beyond the current fiscal year to the repayment of indebtedness of other public entities, notwithstanding the provisions of Section 26 of Article X of the Oklahoma Constitution, or other constitutional provisions. The Legislature may establish for this subsection, the same procedures and limitations authorized in subsection A of this section.
 C. The Legislature, by law, may authorize any city, town, or county to plan, finance and carry out the development or redevelopment of areas determined by the governing body of such city, town, or county to be unproductive, undeveloped, underdeveloped or blighted. The authority of the county shall be limited to the unincorporated areas of such county but any city, town or county may by agreement jointly plan, finance or carry out a development plan *Page 3 
with any other public or private entity for one or more development projects within their respective boundaries.
 D. Any city, town, or county may exercise the provisions of this section separately or in combination with powers granted by any other laws of this state.
Id.; see S.J. Res. 12, 49th Leg., 1st Reg. Sess. (Okla. 2003).
Section 6C(C) authorizes the development or redevelopment of areas determined by a "city, town, or county to be unproductive, undeveloped, underdeveloped, or blighted." Id. Additionally the amendment provides for apportionment of taxes and fees to finance specific public investments. OKLA. CONST. art. X, § 6C(B).
The Oklahoma Legislature enacted the "Local Development Act" ("Act") during the 1992 session. See 1992 Okla. Sess. Laws ch. 342, §§ 1 — 20 (codified as amended at 62 O.S. 2001 Supp. 2008, §§ 850 — 869). One of the Act's tools is tax increment financing, which allows a city, town or county to direct an increase in certain local taxes and/or fees to finance public project costs in order to stimulate development. 62 O.S. 2001, § 851[62-851]. The Oklahoma Supreme Court has interpreted the Act in Harvey v. City of Oklahoma City, 111 P.3d 239, 241 (Okla. 2005), stating:
 Tax increment financing (TIF financing) is a method through which the portion of ad valorem taxes in excess of a base assessed value may be dedicated to finance costs of approved project plans. TIF financing is authorized by Okla. Const. art. 10, § 6C and 62 O.S. 2001 § 851. In two recent decisions we held TIF financing which was virtually identical to the TIF financing in this case does not violate Article 10, § 6C of the Oklahoma Constitution. See City of Guymon v. Butler, 2004 OK 37, 92 P.3d 80, and In re Application of the Oklahoma Development Finance Authority, 2004 OK 51, 94 P.3d 87.
Id. The Act also provides for the dedication of sales taxes, other local taxes, and/or local fees to pay project costs. 62 O.S.Supp. 2008, § 853[62-853](9). *Page 4 
Under the Act tax increment financing may be adopted for a reinvestment area, [1] a historic preservation area[2] or an enterprise area.[3]
A governing body[4] prepares a project plan, [5] including "the proposed boundaries of any project area."[6] 62 O.S.Supp. 2008, § 856[62-856](A). Within a project area, the proposed boundaries of one or more TIF districts[7] can be established to fund approved project costs.[8] *Page 5 
Financing for the project costs is funded by increased revenues from local taxes. This increment is (a) the portion of ad valorem taxes produced by the increased value of the property in the TIF district, measured from the date the ordinance creating the district is passed, and/or (b) the portion of other local taxes collected each year that is generated by the projects in the TIF district, as determined by a formula approved by the governing body. Id. § 853(9).
A review committee is established pursuant to 62 O.S.Supp. 2008, § 855[62-855]. The membership of the review committee shall include representatives of taxing jurisdictions within the proposed district whose ad valorem taxes might be impacted according to the plan.[9] A taxing entity or taxing jurisdiction means "a city, town, county, school district, political subdivision or other local entity in which local taxes or fees are levied by or on its behalf."[10] *Page 6 
If a taxing jurisdiction might be impacted, it is a member of the review committee.[11] The chair of the review committee is designated by the governing body.[12] The review committee includes a representative of the planning commission having jurisdiction over the proposed district.[13] Also, three public members are selected.[14]
The review committee makes findings and recommendations to the governing body regarding the proposed district, plan and project.[15] They may recommend the approval, denial or approval subject to conditions of the project plan.[16] The review committee also determines financial impact on any taxing jurisdiction and must report these findings to the governing body.[17]
The review committee has decision-making authority and must comply with the Oklahoma Open Meeting Act. 25 O.S. 2001 Supp. 2008, §§ 301 — 314.[18] The review committee's findings and recommendations on a project district or the proposed plan or project are not binding on the governing body.[19] If the review committee approves the proposed district or the proposed plan or project, only a majority vote by the governing body is required to implement the action.[20] Approval by the governing body of a proposed district or the proposed plan or project, which is not in accordance with the recommendations and/or conditions of the review committee, shall require a two-thirds (2/3) majority vote. Decisions under the Act are subject to initiative and referendum by the people of the affected city, town or county.[21]
 DISCUSSION *Page 7 1. Does the Local Development Act, 62 O.S. 2001 Supp. 2008, §§ 850 — 869, ("Act") permit a tax increment financing ("TIF") district to be amended? May the boundaries of a TIF district be changed and property removed from one TIF district and added to another TIF district, where the conditions establishing eligibility of the area are met and all other provisions of the Act are followed?
Section 856(C) of the Act in pertinent part provides:
 Notwithstanding any provision contained in an ordinance, resolution or project plan, an ordinance or resolution establishing an increment district shall constitute a legislative act and may be repealed, modified or amended at any time during the term of the increment district, by subsequent action of the governing body except as otherwise authorized pursuant to Sections 854 and 863 of this title; provided, however, that no such ordinance shall be repealed, modified or amended during the time that any bonds payable from incremental revenues are outstanding without the consent of the bondholders, if such bonds are issued pursuant to the provisions of Article X, Section 35 of the Oklahoma Constitution following its amendment by State Question No. 693.
Id. (emphasis added). Oklahoma law permits amending an existing TIF district, subject to Section 856(C)'s limitation regarding amendment while bonds are outstanding. Both Sections 854 and 863 contain provisions for the issuance of bonds or notes for a TIF district.
Section 856 was cited by the Oklahoma Supreme Court in In re OklahomaDevelopment Finance Authority, 94 P.3d 87 (Okla. 2004). The court explained the language was adopted in a legislative response to a challenge under Oklahoma Constitution Article X, Section 26 limiting debt obligations: "we held that the ordinance in question created a debt because it attempted to bind future legislative bodies." Id. at 93 (emphasis added). It is well settled that one legislative body cannot be disabled by the actions of a prior one:
 Every succeeding legislature possesses the same jurisdiction and power with respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, neither more nor less. All occupy, in this respect, a footing of perfect equality. *Page 8 
Conn. Mut. Life Ins. Co. v. Spratley, 172 U.S. 602, 621 (1899) (citation omitted).
A governing body may amend a previously enacted TIF district. Inherent in the establishment of a TIF district is:
 A. 1. A description of the proposed boundaries of the district and the proposed boundaries of the project area by legal description and by street or other recognizable physical feature accompanied by a sketch clearly delineating the area in detail[.]
62 O.S.Supp. 2008, § 858[62-858] (emphasis added). In repealing, modifying or amending a TIF district, a governing body may change the boundary of the TIF district.
A project plan may provide for more than one TIF district within the project area. "`Project plan' means the approved plans of a city, town or county which may include a designated district or districts under this act." Id. § 853(15) (emphasis added). In summary, a governing body may amend the boundaries of one or more TIF districts and thereby change the TIF district in which a parcel of real property is located.
2. Does the Act permit a TIF district to be formed completely orpartially within the geographic boundary of an existing TIF district? Ifso, can the justification for its creation be the same as for theoriginal district?
A TIF district allows for the apportionment of one or more local taxes[22] within the TIF district boundary. A TIF district is located within a project area, which also has geographic boundaries within which development activities will occur.[23] A project plan may provide for more than one TIF district within the project area[24] or a project plan with only one TIF district can be amended to include others.[25] In establishing the TIF district, the governing body must only describe the boundaries of the district "with ordinary and reasonable certainty" to identify the territory included. 62 O.S. Supp. 2008, § 856[62-856](B)(1). There is no prohibition against one TIF district completely encircling a "carved out" second TIF district, much like a donut with a hole in the middle. *Page 9 
The justification for all TIF districts is found in the project plan.Id. § 858(A). A TIF district provides the financing for project costs from increased revenues of local taxes. Nothing in the Act provides that each TIF district must have a different justification. For example, in Oklahoma City, the Skirvin Hotel was originally part of the Downtown/MAPs TIF district. Upon the enactment of the Skirvin Hotel Sales Tax Increment District (discussed below), the sales tax was carved out and apportioned according to the terms of the TIF district. This property is subject to two different TIF districts, one stacked upon another and the sales tax district is completely surrounded by the Downtown/MAPs increment district as one of several TIFs in the Downtown/MAPs Project Area. A TIF district formed within the geographic boundary of a pre-existing TIF district can have the same justification as the original district.
3. Does the Act permit a TIF district to be established within astate-designated enterprise zone?
The Act specifies that, "The Legislature hereby finds that historic preservation, reinvestment or enterprise areas as defined under this act are unproductive, undeveloped, underdeveloped or blighted areas pursuant to subsection C of Section 6 of Article X of the Oklahoma Constitution." 62 O.S. 2001, § 851[62-851]. The plaintiff in Harvey challenged Oklahoma City's use of tax increment financing to redevelop the Skirvin Hotel, a historic building. One of the contentions was that the project violated the Constitution because the hotel was not in a blighted area. It allegedly was outside the scope of the Act because its development purportedly "would have occurred anyway." Id. 111 P.3d at 242. The constitutional argument was based on the Article X, Section 6C language which enables legislation for local governing bodies that determine an area to be "unproductive, undeveloped, underdeveloped or blighted." Id.
(quoting 62 O.S. 2001, § 851[62-851]). Additionally, 62 O.S. 2001, § 852[62-852](2) declares that the Legislature intends "[t]hat the tools of this [Local Development Act] not be used in areas where investment, development and economic growth would have occurred anyway and that the governing body take care to exclude areas that do not meet this criteria[.]" Id. (footnote omitted).
In dispensing with the foregoing arguments, the Oklahoma Supreme Court noted that the Legislature expressly declared in the Act that "historic preservation, reinvestment or enterprise areas as defined under this actare unproductive, undeveloped, underdeveloped or blighted pursuant toArticle 10, § 6C." Harvey, 111 P.3d at 242 (quoting 62 O.S. 2001, § 851[62-851]). Harvey's holding that neither Article X, Section 6C, nor the Act's Section 852 was violated, is equally applicable:
 Since the area involved in this case is undeniably within a state-designated enterprise zone, it is by definition "unproductive, undeveloped, underdeveloped or blighted" for the purpose of TIF financing and therefore automatically qualifies under the Local Development Act. *Page 10 
Id. An "Enterprise area" is defined as "any area within a designated state or federal enterprise zone." 62 O.S.Supp. 2008, § 853[62-853](5). An "Enterprise zone" is defined as "an enterprise zone as designated by the [Oklahoma] Department of Commerce pursuant to the provisions of Section 690.3 of this title or as designated by the federal government[.]" Id.§ 853(6). The Oklahoma Enterprise Zone Act is found at 62 O.S. 2001, §§ 690.1[62-690.1] — 690.20. In summary, a TIF district can be designated within a state-designated enterprise zone.
4. Does the Act authorize the apportionment of local sales taxesgenerated by new development in a sales TIF district? If an entity in asales TIF district purchases items that are subject to the state salestax and any applicable locally imposed sales tax and incorporates theitems as improvements in real property located in the sales TIFdistrict, does the Act authorize the sales tax revenues to be apportionedif the sale took place outside the geographic boundary of the TIFdistrict?
Oklahoma Constitution Article X, Section 6C(B) authorizes legislation permitting cities, towns, or counties to:
 [U]se local taxes and local fees, in whole or in part, for specific public investments [or] assistance in development financing . . . in the area in which the improvements take place and may direct the apportionment of the taxes and fees specified in this subsection for the purposes specified in this section.
Id. Under the Act, "`Local taxes' means ad valorem taxes, sales taxes and other local taxes which are levied by or on the behalf of a taxing entity[.]" 62 O.S.Supp. 2008, § 853[62-853](10) (emphasis added).
Moreover, the definitions of "apportionment" and "increment" underscore the fact that sales tax apportionment is embraced by the Act:
 1. "Apportionment" means the direction by a governing body, authorized by the Legislature pursuant to Section 6C of Article X of the Oklahoma Constitution, to apply all or any portion of an increment of ad valorem taxes and all or any portion of sales taxes, other local taxes or local fees, or any combination thereof, to financing a plan and project in accordance with this act[.]
 . . . .
 9. "Increment" means that portion of ad valorem taxes in excess of the amount of that portion of the taxes which are produced by the levy at the rate fixed each year by or for each such ad valorem taxing entity upon the base assessed *Page 11 
value of the district or as to an area later added to the district, the effective date of the modification of the plan, or that portion of sales taxes, other local taxes or local fees collected each year reasonably determined by a formula approved by the governing body to be generated by the project, which may be apportioned for specific project costs or as a specific revenue source for other public entities in the area in which the project costs take place[.]
Id. (emphasis added) (footnote omitted).
The Act permits establishment of sales TIF districts for allocation to project costs and, additionally, for possible allocation to a public entity:
 A. A project plan may contain a provision that the increments from certain local taxes or fees may be used to finance project costs in areas qualified under the Local Development Act. . . .
 . . . .
 2. All or any portion of:
 . . . .
 b. the increment of local sales taxes, other local taxes or local fees, or a combination thereof, paid to or for the benefit of the city, town, or county approving the plan[.]
 . . . .
 B. If a project plan contains a provision for apportionment . . . the governing body shall direct in the resolution or ordinance approving the plan which portion of the increments, including whether any or all, to be paid into the apportionment fund shall constitute a part of the general fund to be appropriated annually by the governing body, and which portion, including whether any or all, shall constitute funds of a public entity authorized to issue tax apportionment bonds or notes or to incur project costs.
Id. § 861 (emphasis added). Therefore, the Act does allow for apportionment of sales taxes. *Page 12 
The apportionment of sales taxes to finance a plan and project in accordance with the Act is for sales within a TIF district. Under the Streamlined Sales and Use Tax Administration Act:[26]
 A. The retail sale, excluding lease or rental, of a product shall be sourced as follows:
 1. When the product is received by the purchaser at a business location of the seller, the sale is sourced to that business location;
 2. When the product is not received by the purchaser at a business location of the seller, the sale is sourced to the location where receipt by the purchaser, or the purchaser's donee, designated as such by the purchaser, occurs, including the location indicated by instructions for delivery to the purchaser or donee, known to the seller. Provided, this subsection shall not apply to florists until January 1, 2011. Prior to that date, all sales by florists shall be sourced to its business location;
 3. When the provisions of paragraphs 1 and 2 of this subsection do not apply, the sale is sourced to the location indicated by an address for the purchaser that is available from the business records of the seller that are maintained in the ordinary course of the seller's business when use of this address does not constitute bad faith;
 4. When the provisions of paragraphs 1, 2 and 3 of this subsection do not apply, the sale is sourced to the location indicated by an address for the purchaser obtained during the consummation of the sale, including the address of a purchaser's payment instrument, if no other address is available, when use of this address does not constitute bad faith; and
 5. When none of the previous rules of paragraphs 1, 2, 3 and 4 of this subsection apply, including the circumstance in which the seller is without sufficient information to apply the previous rules, then the location will be determined by the address from which tangible personal property was shipped, from which the digital good or the computer software delivered electronically was first available for *Page 13 
transmission by the seller, or from which the service was provided, disregarding for these purposes any location that merely provided the digital transfer of the product sold. In the case of a sale of mobile telecommunications service that is a prepaid telecommunications service, the location will be that which is associated with the mobile telephone number.
68 O.S.Supp. 2008, § 1354.27[68-1354.27].
Pursuant to the Streamlined Sales and Use Tax Administration Act, sales outside the sales tax TIF district where possession of the product was taken at the time of purchase would not be subject to the apportionment rules of the sales tax TIF district. Sales outside the sales tax TIF district where the product is delivered to a location within the sales tax TIF district would be subject to the apportionment rules of the sales tax TIF district. Whether at the time of sale possession of the product was taken or the seller was to deliver the product to a location within the sales tax TIF district is a question of fact and cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Local Development Act, 62 O.S. 2001 Supp. 2008, §§ 850 — 869, allows for a tax increment financing ("TIF") district to be amended, subject to limitations if the governing body has issued notes or bonds. Implicit in the authorization to amend a TIF district is the ability to change the boundary of the TIF district. 62 O.S.Supp. 2008, §§ 856[62-856](C); 858(A).
 2. The Local Development Act provides for the apportionment of local taxes within the boundary of a TIF district. More than one TIF district can be included in a project area. One TIF district can completely encircle another TIF district, or real property can be subject to more than one TIF district for different local taxes. A TIF district formed within the geographic boundary of a pre-existing TIF district can have the same justification as the original district. Id. §§ 853, 856, 858.
 3. The Local Development Act allows for TIF in reinvestment areas, historic preservation areas and enterprise areas within state-designated enterprise zones. Id. § 851, see id. § 853; Harvey v. City of Oklahoma City, 111 P.3d 239, 242 (Okla. 2005). *Page 14 
 4. The Local Development Act allows for the apportionment of sales taxes in a sales TIF district. The Streamlined Sales and Use Tax Administration Act, 68 O.S. 2001 Supp. 2008, §§ 1354.14 — 1354.23, provides that sales outside a sales TIF district where possession of the product was taken at the time of purchase would not be subject to the apportionment rules of the sales TIF district. Sales outside a sales TIF district where the product is delivered to a location within the sales TIF district would be subject to the apportionment rules of the sales TIF district. 62 O.S.Supp. 2008, §§ 853[62-853], 861; 68 O.S.Supp. 2008, § 1354.27[68-1354.27]. Whether at the time of sale possession of the product was taken or the seller was to deliver the product to a location within the sales TIF district is a question of fact and cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
DAVID L. KINNEY
ASSISTANT ATTORNEY GENERAL
[1] "Reinvestment area" means any area located within the limits of a city, town or county requiring public improvements, including but not limited to transportation-related projects identified by any transportation authority pursuant to Section 1370.7 of Title 68 of the Oklahoma Statutes, to reverse economic stagnation or decline, to serve as a catalyst for retaining or expanding employment, to attract major investment in the area or to preserve or enhance the tax base or in which fifty percent (50%) or more of the structures in the area have an age of thirty-five (35) years or more. Such an area is detrimental to the public health, safety, morals or welfare. Such an area may become a blighted area because of any one or more of the following factors: dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; abandonment; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; and lack of community planning. Such an area includes a blighted area as defined in Section 38-101 of Title 11 of the Oklahoma Statutes at the time of approval of the project plan[.]
62 O.S.Supp. 2008, § 853[62-853](17).
[2] "Historic preservation area" means a geographic area listed in or nominated by the State Historic Preservation Officer to the National Register of Historic Places, an historic structure or structures listed individually in or nominated by the State Historic Preservation Officer to the National Register of Historic Places, with such area or structure being subject to historic preservation zoning, or for purposes of ad valorem tax exemptions provided for in subsection D of Section 860 of this title, a structure subject to historic preservation zoning. Rehabilitation undertaken in an historic preservation area shall meet the Secretary of the Interior's Standards for Rehabilitation, latest revision, in order to be eligible for the incentives or exemptions granted pursuant to Section 860 of this title[.]
Id. § 853(8).
[3] "`Enterprise area' means any area within a designated state or federal enterprise zone[.]" Id. § 853(5).
[4] "`Governing body' means the city council of a city, the board of trustees of a town or the board of county commissioners[.]" Id.§ 853(7).
[5] "Project plan" means the approved plans of a city, town or county which may include a designated district or districts under this act in conformance with its comprehensive plan, which is intended by the payment of costs through apportionment of the increment or by the granting of incentives or exemptions to reduce or eliminate those conditions, the existence of which qualified the district, and to thereby enhance private investment of the tax bases of the taxing entities which extend into the district. Project plans may be a part of and incorporate existing neighborhood, renewal, economic development, public school and other such plans. Each project plan shall conform to the requirements specified by this act[.]
Id. § 853(15).
[6] "`Project area' means the geographic boundaries within which development activities will occur. The project area may be coextensive [with] or larger than the increment district[.]" Id. § 853(13).
[7] "`District' means either an incentive district as authorized by Section 860 of this title or an increment district as authorized by Section 861 of this title. A district may consist of all or a portion of a project area[.]" Id. § 853(4).
[8] Title 62 O.S.Supp. 2008, § 853[62-853](14) defines "project costs" and lists specific allowable expenditures.
[9] Id. § 855(A).
[10] Id. § 853(18).
[11] Id. § 855(A).
[12] Id.
[13] Id.
[14] Id.
[15] Id. § 855(B).
[16] Id.
[17] Id. § 855(C).
[18] Id. § 855(F).
[19] Id. § 855(B).
[20] Id. § 855(E).
[21] 62 O.S. 2001, § 868[62-868](A).
[22] "`Local taxes' means ad valorem taxes, sales taxes and other local taxes which are levied by or on the behalf of a taxing entity[.]"Id. § 853(10).
[23] Id. § 858(A)(1).
[24] Id. § 853(15).
[25] Id. § 856(C).
[26] 68 O.S. 2001 Supp. 2008, §§ 1354.14 — 1354.23. *Page 1