2005 OK 20

**Ralph L. HARVEY, Plaintiff/Appellant,**

v.

**The CITY OF OKLAHOMA CITY, a political subdivision of the State of Oklahoma; The Oklahoma City Urban Renewal Authority; and The Oklahoma City Redevelopment Authority, Defendants/Appellees.**

No. 101,332.

Supreme Court of Oklahoma.

March 29, 2005.

Stanley M. Ward, Woodrow K. Glass, and Scott F. Brockman, Norman, OK, for Plaintiff/Appellant, Ralph L. Harvey.

William R. Burkett, Municipal Counselor, Daniel T. Brummit and Kenneth D. Jordan, Assistant Municipal Counselors, Oklahoma City, OK, for Defendant/Appellee, City of Oklahoma City.

Leslie V. Batchelor, James Dan Batchelor, and Emily K. Pomeroy, Oklahoma City, OK, for Defendants/Appellees, Oklahoma City Urban Renewal Authority and Oklahoma City Redevelopment Authority.

COLBERT, J.

¶1 The City of Oklahoma City (City), together with the Oklahoma City Urban Renewal Authority and the Oklahoma City Redevelopment Authority, desire to redevelop the Skirvin Hotel in downtown Oklahoma City. On May 7, 2004, the City adopted a Resolution "approving in principle a funding plan for the Skirvin Hotel Project." In this Resolution, the City noted the Skirvin Hotel, which closed its door for business in 1988, is "one of the most historic buildings in Oklahoma City [and] should not be abandoned and demolished, but instead salvaged and restored to some productive use." The redevelopment would be paid for in part by public funding as authorized by Article 10, § 6C of the Oklahoma Constitution[1] and the Local Development Act, 62 O.S.2001 § 851 *et seq.*, which is the legislation implementing Article 10, § 6C.

¶2 Plaintiff's assertions of error fall into three categories. First, he contends the

---

1. Article X, § 6C (prior to November 2, 2004 amendment) provides:

A. The Legislature, by law, may grant incorporated cities, towns, or counties the ability to provide incentives, exemptions and other forms of relief from taxation for historic preservation, reinvestment, or enterprise areas that are exhibiting economic stagnation or decline. Relief from taxes imposed by other local taxing jurisdictions shall only be allowed by contractual arrangement with the municipal or county governing body. The law shall require public hearings before such relief may be granted and shall provide for the local initiative power and referendum of the people. The Legislature may set limitations on the cumulative incentives and relief provided pursuant to the provisions of this section, the time period for the exemptions, the geographical area of the jurisdiction covered, the percentage of the tax base of the jurisdiction eligible for the relief programs, and threshold limits of investment credit and jobs created.

B. The Legislature, by law, may authorize that the cities, towns, or counties may specifically use local taxes and local fees, in whole or in part, for specific public investments, assistance in development financing, or as a specific revenue source for other public entities in the area in which the improvements take place and may direct the apportionment of the taxes and fees specified in this subsection for the purposes specified in this section. A direction of apportionment may be prospective and may continue for one or more years, and apportioned tax increments may be pledged beyond the current fiscal year to the repayment of indebtedness of other public entities, notwithstanding the provisions of Section 26 of Article X of the Oklahoma Constitution, or other constitutional provisions. The Legislature may establish for this subsection, the same procedures and limitations authorized in subsection A of this section.

C. The Legislature, by law, may authorize any city, town, or county to plan, finance and carry out the development or redevelopment of areas determined by the governing body of such city, town, or county to be unproductive, undeveloped, underdeveloped or blighted. The authority of the county shall be limited to the unincorporated areas of such county but any city, town or county may by agreement jointly plan, finance or carry out a development plan with any other public or private entity for one or more development projects within their respective boundaries.

D. Any city, town, or county may exercise the provisions of this section separately or in combination with powers granted by any other laws of this state.

City's plan violates Article 10, § 26 of the Oklahoma Constitution because it incurs long term debt without the assent of 3/5 of the voters of Oklahoma City and without a determination that the new debt, combined with existing debt, does not exceed 5% of the valuation of all taxable property in Oklahoma City.[2] Second, he contends defendants failed to meet one of the requirements of the Local Development Act in that the Skirvin Hotel is not within a blighted area. Third, he contends the trial court erred in declining to convert defendants' motion to dismiss to a motion for summary judgment so he could conduct discovery.

## PART 1

### The Skirvin Hotel Project Does Not Violate Article 10, Section 26 of the Oklahoma Constitution.

■ ¶ 3 Tax increment financing (TIF financing) is a method through which the portion of ad valorem taxes in excess of a base assessed value may be dedicated to finance costs of approved project plans. TIF financing is authorized by Okla. Const. art. 10, § 6C and 62 O.S.2001 § 851. In two recent decisions we held TIF financing which was virtually identical to the TIF financing in this case does not violate Article 10, § 26 of the Oklahoma Constitution. *See City of Guymon v. Butler*, 2004 OK 37, 92 P.3d 80, and *In re Application of the Oklahoma Development Finance Authority*, 2004 OK 51, 94 P.3d 87.

¶ 4 In *City of Guymon*, the city created a tax increment district pursuant to the Local Development Act, 62 O.S.2001 § 850 *et seq.*, to generate revenue for financial assistance to Seaboard Corporation, to construct a pork processing facility. The additional ad valorem taxes generated by the facility were dedicated to repayment of a $4.5 million bond issue. Similarly, in *In re Application of ODFA*, the city of Ardmore created a tax increment district pursuant to the Local Development Act for improvements to the city airport, and the additional ad valorem taxes generated by those improvements were dedicated to repayment of a $2.25 million bond issue. In both cases, we held that when a city enacts its ordinances concerning TIF financing in compliance with Article 10, § 6C, then the ordinances do not violate Article 10, § 26. We relied on *Oklahoma City Urban Renewal Authority v. Medical Technology & Research Authority*, 2000 OK 23, 4 P.3d 677, in which we found TIF financing to be constitutional as long as the ordinance which creates the financing scheme does not attempt to bind future legislative bodies to continue to make apportionments of the excess ad valorem taxes.

■ ¶ 5 In this case, as in *City of Guymon* and *In re Application of ODFA*, the City amended its Ordinance to change the language from "*shall* be apportioned ... for a period not to exceed 25 years" to "*may* be apportioned" and made other relevant changes to bring the TIF financing into compliance with *Oklahoma City Urban Renewal Authority* (and with *In re Oklahoma Capitol Improvement Authority*, 1998 OK 25, 958 P.2d 759). Thus, for the same reasons stated in *City of Guymon* and *In re Application of the Oklahoma Development Finance Authority*, we hold that the City's proposed use of TIF financing for the Skirvin Hotel Project does not violate Article 10, § 26 of the Oklahoma Constitution as alleged by plaintiff.[3]

2. Article X, § 26 provides in part:
    (a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness ....

3. We further note that in the election held November 2, 2004, the voters of Oklahoma adopted an amendment to Article 10, § 6C of the Oklahoma Constitution. The amendment adds the following language to Paragraph B: "A direction of apportionment may be prospective and may continue for one or more years, and apportioned tax increments may be pledged beyond the current fiscal year to the repayment of indebtedness of other public entities, notwithstanding the provisions of Section 26 of Article X of the Okla-

## PART 2

### The Skirvin Hotel Project Does Not Violate Article 10, Section 6C of the Oklahoma Constitution or Section 852(1) and (2) of the Local Development Act.

¶ 6 In his response to defendants' motion to dismiss, plaintiff added a new argument—that the Skirvin Hotel Project violates Article 10, § 6C because the Skirvin Hotel is not in a blighted area and also violates § 852(1) and (2) of the Local Development Act because development of the Skirvin Hotel "would have occurred anyway."

¶ 7 Paragraph C of § 6C requires that the development or redevelopment areas be determined by the governing body to be "unproductive, undeveloped, underdeveloped or blighted." Similarly, Section 852(1) and (2) of the Local Development Act express the intent of the Legislature that the Act be used in cases "where investment, development and economic growth is difficult, but is possible if the provisions of this act are available" and that the Act not be used in areas "where investment, development and economic growth would have occurred anyway."

¶ 8 However, the Local Development Act specifically declares that "historic preservation, reinvestment or enterprise areas as defined under this act *are unproductive, undeveloped, underdeveloped or blighted pursuant to Article 10, § 6C.*" 62 O.S.2001 § 851 (emphasis added). The Act defines "enterprise area" as "any area within a designated state or federal enterprise zone." 62 O.S.2001 § 853(5). Since the area involved in this case is undeniably within a state-designated enterprise zone, it is by definition "unproductive, undeveloped, underdeveloped or blighted" for the purpose of TIF financing and therefore automatically qualifies under the Local Development Act. Thus, the Skirvin Hotel Project does not violate Article 10, § 6C of the Oklahoma Constitution or § 852(1) and (2) of the Local Development Act as alleged by plaintiff.

homa Constitution, or other constitutional provisions." Among other things, this new language in § 6C reaffirms that when a city's ordinances

## PART 3

### The Trial Court Did Not Commit Reversible Error in Declining to Treat Defendants' Motion to Dismiss as a Motion for Summary Judgment.

¶ 9 Plaintiff attached the following documents to his Petition: (1) City's Resolution dated May 7, 2004, and (2) Skirvin Hotel Funding Plan. Defendants attached the following documents to their motion to dismiss: (1) Order Granting Summary Judgment in *City of Oklahoma City v. Means,* Oklahoma County District Court, No. CJ–2000–9252 (September 18, 2001); (2) City Ordinance No. 21,431 dated February 22, 2000; (3) Downtown/MAPS Economic Development Plan dated July 17, 2001; (4) Amended Downtown/MAPS Economic Development Plan dated June, 2004; (5) City Ordinance No. 21,472 dated April 17, 2000; (6) City Ordinance No. 22,498 dated July 23, 2004; and (7) City Resolution dated August 11, 2004.

¶ 10 Plaintiff argues that defendants' attachments required the trial court. to treat defendants' motion to dismiss as a motion for summary judgment and to permit plaintiff to conduct discovery. According to plaintiff, he needed to conduct discovery to determine "whether this is a case where investment, development and economic growth is difficult, but possible with the use of TIF funds ... whether investment, development and economic growth would have occurred in the area anyway ... [and] whether no economically productive property presently exists within the increment area."

¶ 11 As discussed in Part II of this opinion, the resolution of this case does not turn on the factual questions plaintiff has stated. Rather, since the area involved in this case is within a state-designated enterprise zone, it is by definition "unproductive, undeveloped, underdeveloped or blighted" for the purpose of TIF financing and therefore automatically qualifies under the Local Development Act. No amount of discovery would have affected the resolution of this case.

concerning TIF financing comply with § 6C, the ordinances do not violate § 26.

¶ 12 Even if the trial court should have treated the motion to dismiss as a motion for summary judgment, such failure does not constitute reversible error. It is well settled that a correct judgment will not be disturbed on review, even when the trial court applied an incorrect theory or reasoning in arriving at its conclusion; an unsuccessful party cannot complain of trial court's error when he would not have been entitled to succeed anyway. *Atlantic Richfield Co. v. State ex rel. Wildlife Conservation Comm'n,* 1983 OK 14, 659 P.2d 930, 934 n. 10.

**JUDGMENT OF THE TRIAL COURT AFFIRMED.**

WATT, C.J., WINCHESTER, V.C.J., LAVENDER, HARGRAVE, KAUGER, EDMONDSON, and TAYLOR, JJ., concur.

OPALA, J., not participating.