Dear Senator Brechen,
This office has received an official Attorney General Opinion request from your predecessor Senator Jay Paul Gumm, who asked, in effect, the following questions:
 1. For real property subject to tax increment financing under the Local Development Act, how are ad valorem taxes apportioned? Specifically, how are sinking fund levies apportioned?
 2. If ad valorem taxes from sinking fund levies can be used to finance or pay for project costs under the Local Development Act, does this violate either Article X, Section 19 or Article X, Section 28 of the Oklahoma Constitution?
This office has issued two previous Attorney General Opinions on the Local Development Act. See A.G. Opins. 09-13, at 79; 09-39, at 279.
 ESTABLISHMENT OF TAX INCREMENT FINANCING
On November 6, 1990, the people of Oklahoma adopted State Question 641[1] that added Article X, Section 6C of the Oklahoma Constitution. That section originally provided:
 B. The Legislature, by law, may authorize that the cities, towns, or counties may specifically use local taxes and local fees, in whole or in part, for specific public investments, assistance in development financing, or as a specific revenue source for other public entities in the area in which the improvements take place and may direct the apportionment of the taxes and fees specified in this subsection for the purposes specified in this section. The *Page 2 
Legislature may establish for this subsection, the same procedures and limitations authorized in subsection A of this section.
Id. (emphasis added). Using the power granted under this section, the Oklahoma Legislature enacted the "Local Development Act" ("Act") during the 1992 session. See
1992 Okla. Sess. Laws ch. 342, §§ 1-20 (codified as amended at 62 O.S. 2001 Supp. 2010, §§ 850 — 869). One of the Act's tools is tax increment financing ("TIF"), which allows a city, town or county to direct an increase in certain local taxes and/or fees to finance public project costs in order to stimulate development. 62 O.S. 2001, § 851[62-851].
Under the Act tax increment financing may be adopted for a reinvestment area, [2] a historic preservation area[3] or an enterprise area.[4] A governing body[5] prepares a project plan, [6] including "the *Page 3 
proposed boundaries of any project area."[7] 62 O.S.Supp. 2010, § 856[62-856](A). Within a project area, the proposed boundaries of one or more TIF districts[8] can be established to fund approved project costs.[9]
Financing for project costs is funded by increased revenues from local taxes. This increment is (a) the portion of ad valorem taxes produced by the increased value of the property in the TIF district, measured from the date the ordinance or resolution creating the district is passed; and/or (b) the portion of other local taxes collected each year that is generated by the projects in the TIF district, as determined by a formula approved by the governing body.Id. § 853(9).
 OKLAHOMA PROPERTY TAXES
In Oklahoma the mechanics for ad valorem taxes are found in the Constitution. Initially all real property is presumed to be subject to ad valorem taxes. Exemptions for real property from ad valorem taxes are found under Article X at Sections 6, [10] 6A, [11]
6A, [12], [13] 6B, [14] 6C.[15] Property subject to ad valorem taxes is assessed at rates found at Article X, Section 8. Adjustments to the assessment *Page 4 
ratios is found at Sections 8A, [16] 8B, [17] 8C, [18] 8D, [19]
8E.[20] Assessed values (fair cash value of the real property multiplied by the assessment ratio) are subject to ad valorem tax levy millage[21] rates from taxing jurisdictions that are found at Article X, Sections 9, [22] 9A, [23] 9B, [24] 9C, [25]
9D, [26] 10, [27] 10A, [28] 10B, [29] 35.[30] Ad valorem tax levies for sinking funds to pay for indebtedness of taxing jurisdictions is found at Article X, Section 28.
 THE DISTRIBUTION OF AD VALOREM TAXES ON REALPROPERTY IN A TAX INCREMENT FINANCING DISTRICT
For real property located within a TIF district, the ad valorem tax increment is determined pursuant to 62 O.S.Supp. 2010, § 862[62-862]. Within ninety days after approval of a project plan, the County Assessor determines the total assessed value of all taxable real property within the boundaries of the increment district. Id. § 862(a). This is the "base assessed value." Id. *Page 5 
 For the purposes of allocation of ad valorem taxes, the Act requires that a base assessed value be established on all taxable real property within the boundaries of an increment district. The amount of ad valorem taxes in excess of the base assessed value is the "increment" paid into an apportionment fund established for the payment of the project costs-including the retirement of principal, interest or premiums due in connection with bonds, loans, notes, or other indebtedness incurred to finance projects costs.
Okla. City Urban Renewal Auth. v. Med. Tech. Research Auth,4 P.3d 677, 682-83 (Okla. 2000) (emphasis added) (footnotes omitted). Under the Act, "increment" is defined as:
 [T]hat portion of ad valorem taxes in excess of the amount of that portion of the taxes which are produced by the levy at the rate fixed each year by or for each such ad valorem taxing entity upon the base assessed value of the district or as to an area later added to the district, the effective date of the modification of the plan, or that portion of sales taxes, other local taxes or local fees collected each year reasonably determined by a formula approved by the governing body to be generated by the project, which may be apportioned for specific project costs or as a specific revenue source for other public entities in the area in which the project costs take place[.]
62 O.S.Supp. 2010 § 853[62-853](9). Each year ad valorem tax revenues generated from levies, including sinking fund levies, from within the increment district are apportioned first to the amounts generated by the Base Assessed Value and the excess, which is the increment, is apportioned to finance or pay for project costs. Stated differently, the tax increment is calculated by determining the portion of the taxes attributable to the Base Assessed Value and then allocating the balance, if any, to the incremental increase in value. Taxing jurisdictions with a levy will continue to receive the same ad valorem tax revenues after the establishment of the TIF district.
For example, a TIF district is created and the county assessor calculates the total assessed value of all taxable real property within the boundary of the increment district is $4 million. The levy for these properties based upon this "snapshot" is 100 mils, which results in a total tax bill of $400,000. These taxes are the result of various levies, and are apportioned for common education, county health departments, career-tech, etc. In a subsequent year, the total assessed value increases to $10 million. If the millage rates remain the same, the ad valorem tax revenue will increase to $ 1 million. Under the Local Development Act, $400,000 would continue to be apportioned as originally calculated. The balance of $600,000 is the tax increment, available to finance or pay for project costs. *Page 6 
 THE SUPREME COURT UPHOLDS THE LOCAL DEVELOPMENT ACT OKLAHOMA CITY URBAN RENEWAL AUTHORITY
The first Oklahoma Supreme Court case interpreting Article X, Section 6C and the Local Development Act was OklahomaCity Urban Renewal Authority. In the opinion, [31]
 The dispositive issue presented by the consolidated cases is whether the tax increment financing plan adopted under the Local Development Act [Act], 62 O.S. Supp. 1992 § 850[62-850], et seq., and the Okla. Const, art. 10, § 6C creates a prohibited debt within the meaning of the Okla. Const, art. 10, § 26.
Id. 4 P.3d at 679-80 (footnotes omitted). While finding tax increment financing under the Local Development Act and Oklahoma Constitution Article X, Section 6C facially constitutional, the plan adopted by Oklahoma City created long-term debt without voter approval in violation of Article X, Section 26 of the Oklahoma Constitution.
"The Act [Local Development Act] provides for tax increment financing-a mechanism whereby increments from certain local taxes or fees are dedicated to finance project costs of approved project plans." Id. at 682. Currently the Local Development Act also allows for the dedication of sales taxes, other local taxes, and/or local fees to pay project costs. 62 O.S.Supp. 2010, § 853[62-853](9).Oklahoma City Urban Renewal Authority further provided:
 Tax increment financing utilizing ad valorem taxes assumes that the assessed property value of the area will increase because of the development project and that, absent the project, property values would not rise. The financing plan is intended to create economically productive property where none presently exists by providing inducements for private commercial development. It allows the capture of local taxes generated by a new development instead of allocating the tax increments to the taxing entities.
Id. at 682 (emphasis added) (footnotes omitted).
After explaining the mechanics of tax increment financing the Court said:
 We agree that the Act implements art. 10, § 6C of the Okla. Const, and that § 6C anticipates the use of local taxes, incentives or exemptions to foster the kind of development sought to be accomplished under the tax increment plan. We also recognize that § 6C provides that the Legislature may set time periods for the exemptions. However, nothing in the language of art 10, § 6C indicates that it is *Page 7 intended to affect any other constitutional provision. It contains no language impacting or altering the debt limitations of art. 10, § 26. The language of § 6C allows the Legislature to define the outer limit of time for which apportionment is allowed, it does not authorize the creation of long-term debts. We held tax increment financing constitutional in Muskogee and we find it so here. Nevertheless, a finding that tax increment financing is constitutionally grounded does not prohibit construing the provisions consistent with the debt limitations of art. 10, § 26.
Id. at 685-86 (emphasis added) (footnote omitted).
 Thus the Oklahoma Supreme Court, in a case of first impression, upheld the Local Development Act in Oklahoma City Urban Renewal Authority. Tax increment financing as a mechanism to finance project costs of approved project plans was affirmed. However, other Oklahoma constitutional provisions must be complied with, specifically debt limitation provisions. The project plan adopted by Oklahoma City created long-term debt in violation of Article X, Section 26.
 THE AMENDMENT TO ARTICLE X, SECTION 6C
On November 2, 2004, the people of Oklahoma approved State Question 707, [32] which amended Article X, Section 6C by adding additional language to subsection B:
 A direction of apportionment may be prospective and may continue for one or more years, and apportioned tax increments may be pledged beyond the current fiscal year to the repayment of indebtedness of other public entities, notwithstanding the provisions of Section 26 of Article X of the Oklahoma Constitution, or other constitutional provisions.
Id. (emphasis added). The Oklahoma Supreme Court inHarvey v. City of Oklahoma City, 111 P. 3d 239 (Okla. 2005), noted the 2004 amendment and stated, "Among other things, this new language in [Article X] § 6C reaffirms that when a city's ordinances concerning TIF financing comply with § 6C, the ordinances do not violate [Article X] § 26." Id at 241 n3.
 ARTICLE X, SECTION 19
Oklahoma Constitution Article X, Section 19 provides:
 Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax *Page 8 
shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.
Id. This constitutional provision serves to prevent "concealment of the purpose of a tax levy and to prohibit the improper use of a fund after it has already been pledged for the payment of a certain obligation." Black v. Okla. Funding BondComm'n, 140 P.2d 740, 743 (Okla. 1943). The word "purpose" is used broadly in the constitution and in statutes requiring that the purpose of a tax must be stated. "Purpose" is not synonymous with a specific project. State ex rel. Howard v. Crawford,16 P.3d 473, 477 (Okla. Civ. App. 2000). This provision was part of the original Oklahoma Constitution and has never been amended.
 ARTICLE X, SECTION 28
Article X, Section 28 of the Oklahoma Constitution provides:
 Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay.
Id. Counties, cities, townships, school districts, and other political subdivisions are subject to constitutional limitations both as to the amount of debt, and the manner in which debt may be incurred. Cities and towns in Oklahoma are authorized to issue bonds under the provisions of Article X, Sections 26(a) (general obligation bonds), 27 (public utility bonds), 27A (water facilities) and 27B(A) (public utility revenue bonds). Schools may only become indebted consistent with the provisions of Article X, Section 26. Bonds issued pursuant to these provisions are paid from revenues generated from the sinking fund levy found at Article X, Section 28. This provision was part of the original Oklahoma Constitution and has never been amended.
 DISCUSSION
"Generally, the provisions of a Constitution are construed using the usual rules of statutory construction." Cowart v. PiperAircraft Corp., 665 P.2d 315, 317 (Okla. 1983). A constitutional provision must be "construed as a consistent whole, in harmony with common sense and reason, and every part should be given effect if possible." Poafpybitty v. Shelly Oil Co., 394 P. 2d 515,518 (Okla. 1964) (citation omitted). The 1990 amendment to the Oklahoma Constitution allowed the Oklahoma Legislature to enact the Local Development Act and provide cities, town and counties the ability to provide ad valorem tax increment financing. The Oklahoma Supreme Court has consistently upheld the apportionment of ad valorem taxes under the Local Development Act.See Okla. City Urban Renewal Auth., 4 P.3d 677 passim; CityofGuymon v. Butler, 92 P.3d SO passim (Okla. 2004); In reOkla. Dev. Finance Auth.,94 P.3d 87 passim (Okla. 2004); Harvey,111 P.3d 239 passim. The Oklahoma Supreme Court also facially upheld tax increment financing with regard to urban renewal *Page 9 
and urban redevelopment projects subject to the same Article X, Section 26 restrictions discussed in Oklahoma CityUrban Renewal Authority. SeeMuskogee Urban Renewal Auth. v. ExciseBd, 899 P.2d 624, 633 (Okla. 1995). That Court also recognized the possibility of an issue with Article X, Section 28, but since it was not raised by either party to the litigation it did not address the matter. Mat 63 In. 19.
It is not to be assumed that a constitutional provision contains excess verbiage having neither force nor effect. Cowart,665 P.2d at 317. The "construction of a constitutional provision must not be so strict or technical as to defeat the object and purpose of its adoption." Lone Star Gas Co. v. Bryan County ExciseBd., 141 P.2d 83,85(Okla. 1943). A new constitutional provision that contains some of the same subject matter will suspend inconsistent former provisions whether or not those provisions are specifically mentioned. In re Initiative Petition No. 259,316 P.2d 139, 144 (Okla. 1957). The 2004 amendment to Article X, Section 6C specifically addressed the issue of OklahomaCity Urban Renewal Authority, and the creation of long-term debt without voter approval pursuant to Article X, Section 26.Harvey at 241. The amendment also addressed any "other constitutional provisions" that might hinder tax increment financing. OKLA. CONST, art. X, § 6C(B). The amendment is similar to the "[djespite any provision to the contrary" language in other provisions in Article X of the Oklahoma Constitution: Limit on percentage of fair cash value of real property-Section 8B; Limit on fair cash value on homestead-Section 8C(A); Household personal property exemption — Permanently disabled veterans-Section 8D(A); Homestead exemption-Military service disability-Section 8E(A). Tax Increment Financing is not prohibited by the "one purpose" provision of Article X, Section 19, or the sinking fund levy provisions of Article X, Section 28 of the Oklahoma Constitution.
By enacting the amendment to Article X, Section 6C(B) in 2004, the people of Oklahoma approved the use of tax increment financing to the fullest extent allowed. Provisions enacted with the original Oklahoma Constitution need not be a restriction. Under the Local Development Act, taxing jurisdictions continue to receive the same ad valorem tax revenues, which include sinking fund levies, after the establishment of a tax increment financing district. Tax revenues based upon increased values can be apportioned to finance or pay for project costs. After the financing or project costs are paid, these taxing jurisdictions will receive the full tax revenues produced from the increased value of these properties.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Oklahoma Supreme Court has upheld the apportionment of ad valorem taxes by taxing jurisdictions under the Local Development Act. See Okla. City Urban Renewal Auth. v. Med. Tech. Research Auth., 4 P.3d 677 passim (Okla. 2000); City of Guymon v. Butler, 92 P.3d 80 passim (Okla. 2004); In re Okla. Dev. Fin. Auth., 94 P.3d 87 passim (Okla. 2004); Harvey v. City of Okla. City, 111 P.3d 239 passim (Okla. 2005). *Page 10 
 2. Upon the creation of a tax increment district by a governing body, which includes the city council of a city, the board of trustees of a town, or the board of county commissioners, the Local Development Act requires that a base assessed value be established on all taxable real property within the boundaries of an increment district. In future years, the amount of ad valorem taxes in excess of the base assessed value is the "increment" paid into an apportionment fund to finance or pay for project costs. Okla. City Urban Renewal Auth., 4 P.3d 682-83; 62 O.S.Supp. 2010, § 853[62-853](9); 62 O.S.Supp. 2010, § 862[62-862].
 3. A taxing jurisdiction with a sinking fund levy will continue to receive the same ad valorem tax revenues after the establishment of a tax increment district. Ad valorem tax revenues attributable to the sinking fund levy above the base assessed value of the district will be paid into an apportionment fund to finance or pay for project costs. Okla. City Urban Renewal Auth., 4 P.3d 682-83; 62 O.S. Supp. 2010, § 853[62-853](9); 62 O.S. Supp. 2010, § 862[62-862].
 4. The 2004 amendment to Article X, Section 6C(B) provides for apportionment, "notwithstanding the provisions of Section 26 of Article X of the Oklahoma Constitution, or other constitutional provisions." A new constitutional provision that contains some of the same subject matter will suspend inconsistent former provisions whether or not those provisions are specifically mentioned. Article X, Sections 19 and 28 were part of the original constitution and have never been amended. Ad valorem tax revenues attributable to a sinking fund levy above the base assessed value of the district can be apportioned to finance or pay for project costs and do not violate the "single purpose" provisions of Article X, Section 19 or the limited use provisions of Article X, Section 28 of the Oklahoma Constitution. In re Initiative Petition No. 259, 316 P.2d 139, 144(pkla. 1957); 62O.S.Supp.2010, § 853(9); 62 O.S.Supp. 2010, § 862[62-862].
E. SCOTT PRUITT OKLAHOMA ATTORNEY GENERAL
DAVID L. KINNEY ASSISTANT ATTORNEY GENERAL
[1] Article X, Section 6C was added by State Question No. 641, Legis. Ref. No. 287. Seehttps://www.sos.ok.gov/gov/questions.aspx
(last visited April 15, 2011).
[2]
 "Reinvestment area" means any area located within the limits of a city, town or county requiring public improvements, including but not limited to transportation-related projects identified by any transportation authority pursuant to Section 1370.7 of Title 68 of the Oklahoma Statutes, to reverse economic stagnation or decline, to serve as a catalyst for retaining or expanding employment, to attract major investment in the area or to preserve or enhance the tax base or in which fifty percent (50%) or more of the structures in the area have an age of thirty-five (35) years or more. Such an area is detrimental to the public health, safety, morals or welfare. Such an area may become a blighted area because of any one or more of the following factors: dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; abandonment; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; and lack of community planning. Such an area includes a blighted area as defined in Section 38-101 of Title 11 of the Oklahoma Statutes at the time of approval of the project plan[.]
62 O.S.Supp. 2010, § 853[62-853](17).
[3]
 "Historic preservation area" means a geographic area listed in or nominated by the State Historic Preservation Officer to the National Register of Historic Places, an historic structure or structures listed individually in or nominated by the State Historic Preservation Officer to the National Register of Historic Places, with such area or structure being subject to historic preservation zoning, or for purposes of ad valorem tax exemptions provided for in subsection D of Section 860 of this title, a structure subject to historic preservation zoning. Rehabilitation undertaken in an historic preservation area shall meet the Secretary of the Interior's Standards for Rehabilitation, latest revision, in order to be eligible for the incentives or exemptions granted pursuant to Section 860 of this title[.]
Id. § 853(8).
[4] `"Enterprise area' means any area within a designated state or federal enterprise zone[.]" Id. § 853(5).
[5] `"Governing body' means the city council of a city, the board of trustees of a town or the board of county commissioners[.]"Id. § 853(7).
[6]
 "Project plan" means the approved plans of a city, town or county which may include a designated district or districts under this act in conformance with its comprehensive plan, which is intended by the payment of costs through apportionment of the increment or by the granting of incentives or exemptions to reduce or eliminate those conditions, the existence of which qualified the district, and to thereby enhance private investment of the tax bases of the taxing entities which extend into the district. Project plans may be a part of and incorporate existing neighborhood, renewal, economic development, public school and other such plans. Each project plan shall conform to the requirements specified by this act[.]
Id. § 853(15).
[7] `"Project area' means the geographic boundaries within which development activities will occur. The project area may be coextensive [with] or larger than the increment district[.]"Id. § 853(13).
[8] "`District' means either an incentive district as authorized by Section 860 of this title or an increment district as authorized by Section 861 of this title. A district may consist of all or a portion of a project area [.]" Id. § 853(4).
[9] Section 853(14) defines "project costs" and lists specific allowable expenditures.
[10] "Property exempt from taxation — Exemptions under territorial law — Storm shelters — Exemption of certain property determined by special election." Id.
[11] "Intangible personal property exempt from ad valorem or other tax" Id.
[12] "Tangible personal property moving through State — Situs." Id.
[13] The Oklahoma Constitution has two different Section 6A provisions.
[14] "Qualifying manufacturing concern-Ad valorem tax exemption."Id.
[15] "Tax relief for historic preservation, reinvestment, or enterprise areas-Economic stagnation or decline-Use of local taxes and fees for public investments-Development or redevelopment of unproductive, etc. areas[.]" Id.
[16] "Approval of exemption of household goods of heads of families and livestock employed in support of family-Adjusted millage rate — Computation procedure — Maximum rate."Id.
[17] "Limit on percentage of fair cash value of real property."Id.
[18] "Limit on fair cash value on homestead." Id.
[19] "Household personal property exemption — Permanently disabled veterans." Id.
[20] "Homestead Exemption — Military Service Disability."Id.
[21] "`Mill' or `millage' means the rate of tax imposed upon taxable value. One (1) mill equals One Dollar ($1.00) of tax for each One Thousand Dollars ($1,000.00) of taxable value[.]" 68 O.S.Supp. 2010, § 2802[68-2802](22).
[22] "Amount of ad valorem tax[.]".
[23] "Additional county ad valorem tax levy for department of health[.]" Id.
[24] "Technology center school districts for technology center schools-Tax ievies[.]" Id.
[25] "Emergency Medical Service Districts[.]" Id.
[26] "Solid waste management services[.]" Id.
[27] "Increased rate for public buildings or for building fund for school districts — Permanent levy[.]" Id.
[28] "Tax levy for cooperative county libraries and joint city-county libraries[.]" Id.
[29] "Municipally-owned hospitals — Operation and maintenance — Tax levy[.]" Id.
[30] "Municipal and county levy for securing and developing industryf.]" Id.
[31] Justice Kauger wrote the opinion, with two Justices concurring, two Justices concurring in deference to stare decisis, and one Justice concurring in the result.
[32] Article X, Section 6C was amended by State Question No. 707, S.J.R. 12. See https://www.sos.ok.gov/gov/questions. aspx (last visited April 21, 2011). *Page 1