WISHON v. SANDERS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WISHON v. SANDERS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WISHON v. SANDERS
2020 OK CIV APP 29
Case Number: 118050
Decided: 04/09/2020
Mandate Issued: 06/17/2020
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2020 OK CIV APP 29, __ P.3d __

 

GENE WISHON and SHIRLEY WISHON, Plaintiffs/Appellants,
v.
BRIAN SANDERS, AMY L. SANDERS, and UNITED STATES OF AMERICA, on behalf of its agency, Farm Service Agency United States Department of Agriculture, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
SEMINOLE COUNTY, OKLAHOMA

HONORABLE TIMOTHY L. OLSEN, JUDGE

AFFIRMED AS MODIFIED AND REMANDED

Terry W. Tippens, Doneen Douglas Jones, FELLERS, SNIDER, BLANKENSHIP, BAILEY & TIPPENS, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellants,

Ed Cadenhead, THE CADENHEAD LAW FIRM, P.C., Seminole, Oklahoma, and
Jerry Colclazier, Amie R. Colclazier, COLCLAZIER & ASSOCIATES, Seminole, Oklahoma, for Defendants/Appellees.

Bay Mitchell, Presiding Judge:

¶1 Plaintiff/Appellant Shirley Wishon (Wishon) appeals from an order of the trial court denying her motion for a writ of assistance to recover real property and finding her 2011 quiet title judgment against Defendants/Appellees Brian and Amy Sanders (the Sanders) was dormant under 12 O.S. 2011 §735. After de novo review, we find Oklahoma's dormancy provision does not apply to quiet title judgments. However, because the 2011 action only quieted title and does not appear to have properly adjudicated Wishon's right to possession, we find the court properly denied the writ of assistance. Wishon may seek a writ of assistance in any case in which the court has properly ordered possession of the property or she must bring a new action to recover possession. We affirm.

¶2 The real property at issue in this case -- several tracts of land in Seminole County (the Subject Property) -- has been the subject of numerous lawsuits between the parties. The litigation began in Kingfisher County in case no. CJ-2003-27. Gene Wishon (now deceased) and Shirley Wishon sued Defendant/Appellee Brian Sanders to recover on a promissory note and to enforce obligations related to unpaid debts of a company in which Gene and Brian had been members. The Wishons filed a lis pendens on the Subject Property along with the lawsuit. After recovering judgments totaling $1,082,381.03, the Wishons moved to execute against the Subject Property and purchased the property at a sheriff's sale. Sanders did not appeal the order confirming the sheriff's sale. The Kingfisher County district court ordered the court clerk to issue of a writ of assistance so that the Wishons could take possession of the property. The writ, however, was returned by the sheriff as "unable to serve."

¶3 Since then, the Sanders have taken various steps to attempt to retain title and possession of the Subject Property.[1] Wishon has obtained two quiet title judgments in Seminole County to defeat the Sanders' various claims to the property and to remove apparent clouds on the title created by the Sanders' actions. Both orders quieting title were affirmed on appeal. See Wishon v. Sanders, Case No. 109,893 (decided October 17, 2012) and Wishon v. Sanders, Case No. 114,977 (decided February 16, 2017).

¶4 Although title to the Subject Property has been quieted twice, Wishon has been unable to obtain possession of the property. Wishon recently filed motions seeking writs of assistance to recover possession of the property in each of the three actions discussed above. This appeal springs from the first quiet title action. The order quieting title in this case was entered on August 24, 2011. Wishon challenges the court's finding that she can no longer seek to enforce the judgment because it has gone dormant pursuant to 12 O.S. 2011 §735.

¶5 The interpretation and effect of Oklahoma's dormancy statute present questions of law, which are reviewed de novo. See Hub Partners XXVI, Ltd. v. Barnett, 2019 OK 69, ¶6, 453 P.3d 489. Under the de novo standard of review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its legal rulings. Id. The fundamental purpose of statutory construction is to determine and give effect to legislative intent. Humphries v. Lewis, 2003 OK 12, ¶7, 67 P.3d 333. "Generally, the plain language of a statute dictates its meaning." McNeill v. City of Tulsa, 1988 OK 2, ¶9, 953 P.2d 329. However, when the legislative intent cannot be determined from the statutory language due to ambiguity or conflict, rules of statutory construction should be employed. Keating v. Edmondson, 2001 OK 110, ¶8, 37 P.3d 882. Legislative intent is ascertained from the whole act in light of its general purpose and objective, and we must consider relevant provisions together to give full force and effect to each. Id. Legislative purpose and intent may also be ascertained from the language in the title to a legislative enactment. Naylor v. Petuskey, 1992 OK 88, ¶4, 834 P.2d 439.

¶6 Oklahoma's dormancy statute is located in Title 12, Chapter 13, which is titled "Executions." Section 735 is grouped with six other statutes under the subchapter titled "General Provisions." All of the statutes grouped with §735 address executions. See 12 O.S. §731 (executions defined and how issued); §732 (kinds of execution); §733 (property subject to levy); §734 (property bound after seizure); §736 (writs of execution); and §737 (priority among execution). The remainder of the provisions in Chapter 13 address more specifically the procedures and rules for various methods of execution.

¶7 The dormancy statute is also focused on executions. Section 735 provides as follows:

A. A judgment shall become unenforceable and of no effect if, within five (5) years after the date of filing of any judgment that now is or may hereafter be filed in any court of record in this state:

1. Execution is not issued by the court clerk and filed with the county clerk as provided in Section 759 of this title;

2. A notice of renewal of judgment substantially in the form prescribed by the Administrative Director of the Courts is not filed with the court clerk;

3. A garnishment summons is not issued by the court clerk; or

4. A certified copy of a notice of income assignment is not sent to a payor of the judgment debtor.

B. A judgment shall become unenforceable and of no effect if more than five (5) years have passed from the date of:

1. The last execution on the judgment was filed with the county clerk;

2. The last notice of renewal of judgment was filed with the court clerk;

3. The last garnishment summons was issued; or

4. The sending of a certified copy of a notice of income assignment to a payor of the judgment debtor.

C. This section shall not apply to judgments against municipalities or to child support judgments by operation of law.

12 O.S. 2011 §735. In sum, §735 requires enforcement (or active attempts at enforcement) of a judgment within five years. A party must execute on his judgment, obtain a garnishment summons, send a certified copy of an income assignment, or file a renewal of judgment within five years of the judgment. If more than five years have passed since the last execution, garnishment summons, income assignment, or renewal, the judgment becomes unenforceable.

¶8 An execution is a process of the court through which the sheriff is ordered to enforce a judgment. 12 O.S. 2011 §731; Black's Law Dictionary 650, (9th ed. 2009). There are three types of executions: (1) against the judgment debtor's property; (2) for the delivery of real or personal property; and (3) special executions. The first type of execution is commonly referred to as a "general execution," meaning that any non-exempt property of the judgment debtor may be executed upon and sold for the payment of judgment debts. See 12 O.S. 2011 §733. The second kind of execution is used where the judgment provides for recovery of specific real or personal property. The third kind of execution, a special execution, is one that directs a levy upon a specific piece of property. See Okla. Salvage & Supply Co., 1926 OK 595, ¶5, 251 P. 1006 ("A special execution is one that directs a levy upon some special property, while a general execution is one that makes no such requirement but demands a levy upon the debtor's property generally.").

¶9 Interpreting the dormancy statute as applying to all judgments is problematic because it requires us to assume that all judgments may be enforced through execution. A quiet title judgment does not require or allow for execution because a quiet title judgment, standing alone, does not provide for any monetary award or award possession of the property. See Schultz v. Evans, 1951 OK 61, ¶13, 228 P.2d 626 ("The purpose of an action to quiet title . . . is to determine who is the real owner of the property and to put to rest all adverse claims.") (citation omitted) and Krosmico v. Pettit, 1998 OK 90, n. 1, 968 P.2d 345 ("A party . . . claiming right of possession obtains relief by an action in ejectment[.]"). For the same reason, garnishment summons and income assignments are not necessary or available to effectuate a quiet title judgment.

¶10 Although technically, a party could file a renewal of the quiet title judgment every five years, no published decision in Oklahoma has imposed such a requirement, and because of the nature of quiet title judgments, we will not do so here. "[T]he judgment rendered [in a quiet title action] is final and conclusive as against the parties thereto and their privies." Schultz v. Evans, 1951 OK 61, ¶13, 228 P.2d 626 (citation omitted). A quiet title judgment simply clears and removes any clouds on title to real property. Nothing more is required to preserve it.[2]

¶11 The statute does not address whether judgments that cannot be executed upon may become dormant, and, if so, how to prevent dormancy of those judgments. Statutory construction that would lead to an absurdity must be avoided, and a rational construction should be given to a statute if the language fairly permits. Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n., 1988 OK 117, ¶7, 764 P.2d 172. Because none of the alternatives offered by §735 for keeping a judgment active are available or applicable to quiet title judgments, application of §735 to a quiet title judgment would lead to an absurd result. Accordingly, we must give §735 a rational construction if fairly permitted.

¶12 In North v. Haning, 1950 OK 280, 229 P.2d 574, the Oklahoma Supreme Court noted the following regarding §735:

We think it clear that the intent and purpose of section 735 was to require that when there has been a final determination of the rights of the parties in an action, that there shall be an exercise of such rights as determined within five years, or that said rights shall become dormant and may not be exercised, or more specific, that when there has been a final determination of the rights of the parties in an action which includes a right to have issue of the process of the court against the estate of any person, or against a particular property, that upon a failure to have such general or special execution issue within five years, the right to such process shall be lost.

Id., ¶13 (emphasis added). We agree with the Court's clarification: the dormancy provision applies to judgments (final determinations of the rights of the parties in an action) which include the right to execute on the judgment. Because a quiet title judgment does not require or allow for execution, it is not subject to dormancy.

¶13 We acknowledge that the dormancy statute uses the word "judgment" broadly and, in Oklahoma, "judgment" is also broadly defined as "the final determination of the rights of the parties in an action." See 12 O.S. 2011 §681. However, we find support for our conclusion from the whole act in light of its general purpose and objective and after consideration of all relevant provisions together. See Keating, ¶8. Title 12, Chapter 13 concentrates on the procedures and rules regarding executions. Accordingly, limiting 735's application to judgments which include the right to execute does not defeat the general purpose and objective of the dormancy provision, which is to require those with the right to enforce a judgment to timely do so. We also acknowledge §735 notes only two exceptions to the dormancy statute -- judgments against municipalities and judgments for child support -- and quiet title judgments are not an included exception. See 12 O.S. 2011 §735(C). However, we read subsection (C) as merely carving out two types of executable judgments that are not subject to dormancy.

¶14 The court here erred by finding Wishon's quiet title judgment is dormant. And, as explained, a quiet title judgment cannot become dormant. But that does not mean the writ of assistance should have been issued. The writ of assistance, the denial of which is the order on appeal, must be based on a proper determination of the right to possession (ordinarily in an ejectment action). The trial court's 2011 judgment quieted title to the property, but the right to possession does not appear to have been litigated.[3] That being the case, denying the writ of assistance was proper.[4] The right to possession must be properly litigated and determined before a writ of assistance should issue. We AFFIRM the denial of the writ for the reasons stated and REMAND for further proceedings to determine Wishon's right to possession.

¶15 AFFIRMED AS MODIFIED AND REMANDED

SWINTON, V.C.J., and BELL, J. (sitting by designation), concur.

FOOTNOTES

[1] Specifically, before the judgments were entered in the Kingfisher County proceeding, Brian Sanders deeded the property to his wife, Amy Sanders. The Sanders claimed the transfer rendered Wishon's interest obtained at the sheriff's sale subordinate to Amy's. In addition, in 2013, Brian Sanders reinstated the parties' former company and filed a notice of after-acquired title on the company's behalf.

[2] Although a party may record his quiet title judgment, recording is not required. See 16 O.S. 2011 §31 (noting that any judgment or decree adjudging real estate interests "may be filed for record and recorded in the office of the register of deeds[.]") (emphasis added); see also Hess v. Excise Bd. of McCurtain Cnty., 1985 OK 28, ¶7, 698 P.2d 930 (noting that "may" usually denotes "permissive or discretional, and not mandatory, action or conduct[.]").

[3] Although the quiet title order notes that the Wishons are entitled to sole possession of the property, the record indicates possession was not properly pled or actually litigated in this case. "[A] judgment outside the scope of the issues presented for adjudication by the trial court is of no force and effect, or coram non judice, and void at least insofar as it goes beyond the issues properly presented." In re Guardianship of Stanfield, 2012 OK 8, n. 52, 276 P.3d 989.

[4] "It is well settled that a correct judgment will not be disturbed on review, even when the trial court applied an incorrect theory or reasoning in arriving at its conclusion; an unsuccessful party cannot complain of trial court's error when he would not have been entitled to succeed anyway." Harvey v. City of Okla. City, 2005 OK 20, ¶12, 111 P.3d 239.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 2, 748 P.2d 990, State, ex rel., Oklahoma Bar Ass'n v. Fuller
Cited
 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1992 OK 88, 834 P.2d 439, 63 OBJ 1834, Naylor v. Petuskey
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 2003 OK 12, 67 P.3d 333, HUMPHRIES v. LEWIS
Discussed
 2005 OK 20, 111 P.3d 239, HARVEY v. CITY OF OKLAHOMA CITY
Discussed
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed
 2019 OK 69, 453 P.3d 489, HUB PARTNERS XXVI, LTD. v. BARNETT
Discussed
 1998 OK 2, 953 P.2d 329, 69 OBJ 208, McNEILL v. CITY OF TULSA
Cited
 1926 OK 595, 251 P. 1006, 122 Okla. 128, OKLAHOMA SALVAGE & SUPPLY CO. v. FIRST NAT. BANK OF OKMULGEE
Discussed
 1951 OK 61, 228 P.2d 626, 204 Okla. 209, SCHULTZ v. EVANS
Discussed at Length
 1950 OK 280, 229 P.2d 574, 204 Okla. 321, NORTH v. HANING
Discussed
 1998 OK 90, 968 P.2d 345, 69 OBJ 3237, Krosmico v. Pettit
Discussed
 1985 OK 28, 698 P.2d 930, Hess v. Excise Bd. of McCurtain County
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 681, Definition of Judgment
Cited
 12 O.S. 731, Issuance of Executions
Discussed
 12 O.S. 733, Nonexempt Property Subject to Payment of Debts and Liable to Be Taken on Execution and Sold
Cited
 12 O.S. 735, Must Be Issued within Five Years or Judgment Becomes Dormant - Inapplicable to Municipalities
Discussed at Length
Title 16. Conveyances
 Cite
Name
Level

 16 O.S. 31, Filing and Recording of Judgment
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA